GEORGE BULLOCK, Respondent, v. JAMES S. COOLEY, as District Superintendent of the First Supervisory District of Nassau County, et al., Appellants, Impleaded with Others.

**Public schools — constitutional law — dissolution and consolidation of school districts — powers of district superintendent in such matters under the statute (Education Law, Cons. Laws, ch. 16, § 129) — provision of statute permitting appeals to state commissioner of education constitutional and valid and his decision on appeal from an order of consolidation not open to review in the courts.**

1. Under the statute (Education Law, Cons. Laws, ch. 16, § 129) a district superintendent may, without the consent of the districts, dissolve one or more school districts and may unite the territory thereof to any adjoining district, except a union free school district whose boundaries are coterminous with the boundaries of an incorporated village or city. A distinction is made in the Education Law between the alteration of the boundaries of a school district and the dissolution, reformation and consolidation of districts (§§ 123–129).

2. Section 890 (formerly 880) of the Education Law, permitting appeals to the state commissioner of education and making his decision on such appeals final and conclusive, is constitutional and valid. The

purpose of this statute is to put all controversies over school matters in his charge and to remove them, as far as practicable, from the courts, and hence, a decision of the state commissioner of education on an appeal from an order of consolidation is not open to review in the courts.

3. Where two school districts in the town of Oyster Bay were dissolved and united with another district, the fact that one of those districts is an island separated from the mainland and the district with which it is united, by the waters of Oyster bay, from half a mile to about a mile wide, which is a part of Long Island sound, does not prevent the consolidation. School districts may be considered as adjoining for school purposes even when divided by creeks or other natural boundaries.

4. Where the determination of the district superintendent, in such case, was made after examination of all the facts and circumstances, it cannot be held to be arbitrary or without a basis of jurisdiction upon the law and the facts and the court will not set aside his determination at the instance of a subordinate school officer who has first subjected himself by appeal to the jurisdiction and authority of the commissioner of education and only sought relief from the courts after his failure to succeed in the proceeding specially designed to settle controversies in school matters.

*Bullock* v. *Cooley*, 183 App. Div. 529, reversed.

(Argued January 9, 1919; decided February 25, 1919.)

APPEAL from a judgment, entered July 6, 1918, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of defendants, entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank B. Gilbert* for James S. Cooley, as district superintendent, appellant. The court below erred in its interpretation of section 129 of the Education Law in so far as it held that school districts Nos. 7 and 10 of the town of Oyster Bay could not under such section be dissolved and the territory thereof annexed to union

free school district No. 9 of such town. (*Mahler* v.
*N. & N. Y. Transp. Co.*, 35 N. Y. 352; *Matter of U.
B. Material Co.*, 137 App. Div. 893.) The order of the
district superintendent is not void because made without
the consent of the trustees of the dissolved districts.
The order was executed under section 129 of the Educa-
tion Law, which does not require the consent of the
trustees of the dissolved districts. (*State Board* v. *Halli-
day*, 150 Ind. 216; *Kelly* v. *Multnomah Co.*, 18 Ore.
356; *City of New York* v. *New York City Railway Co.*,
193 N. Y. 543; *Grimmer* v. *Tenement House Dept.*, 205
N. Y. 549; *Kings County Lighting Co.* v. *City of New
York*, 176 App. Div. 175.) The plaintiff having submitted
the controversy as to the consolidation of district No. 7,
Oyster Bay, with union free school district No. 9 of
such town to the commissioner of education, he is bound
by the decision of the commissioner on such appeal and
the validity of the order of consolidation as affirmed by
the commissioner may not be questioned in this action.
(Code Civ. Pro. § 1926; *Welker* v. *Lathrop*, 210 N. Y.
434; *People ex rel. Jennings* v. *Finley*, 175 App. Div.
204; *People ex rel. Bd. of Education* v. *Finley*, 211
N. Y. 51.)

*William D. Guthrie* for Board of Education of Union
Free School District No. 9 of the Town of Oyster Bay
et al., appellants. The territory of Centre island adjoins
the Oyster Bay school district No. 9, within the intent
and meaning of section 129 of the Education Law.
(*United States* v. *Bevans*, 3 Wheat. 336; *Matter of United
Building Material Co.*, 137 App. Div. 893; *Mahler* v.
*N. & N. Y. Transp. Co.*, 35 N. Y. 352; *Brown* v. *Burt*,
81 L. J. Rep. 17; *Cunningham's Case*, Bell's Crown Cas.
72; *D. U. S. Cable Co.* v. *A. A. Tel. Co.*, L. R. 2 App.
Cas. 394; *Cave* v. *Horsell*, 1912, 3 K. B. 533; *Vestal* v.
*Little Rock*, 54 Ark. 321.) The consolidation order is not

void because made without the consent of the trustees of the dissolved districts. (*McCluskey* v. *Cromwell*, 11 N. Y. 593; *Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549; *People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405; *New Haven R. R. Co.* v. *Interstate Commerce Com.*, 200 U. S. 361; *United States* v. *Hermanos y Compania*, 209 U. S. 337; *Copper Queen Mining Co.* v. *Arizona Board*, 206 U. S. 474; *Langto* v. *Raymond*, 90 App. Div. 614; *Pouch* v. *Prudential Ins. Co.*, 204 N. Y. 281; *Caesar* v. *Bernard*, 156 App. Div. 724.)

*William N. Dykman, Alfred T. Davison* and *James K. Foster* for respondent. Common school district No. 7 and union free school district No. 9 are not adjoining school districts within the meaning of the Education Law. (*Holmes* v. *Carley*, 31 N. Y. 289; *Matter of Ward*, 52 N. Y. 395; *Child* v. *Starr*, 4 Hill, 369; *Bechtel* v. *Village of Edgewater*, 45 Hun, 240; *Saranac L. & T. Co.* v. *Roberts*, 208 N. Y. 288; *Caddy* v. *Interborough R. T. Co.*, 195 N. Y. 415; *Baxter* v. *York Realty Co.*, 128 App. Div. 79; *Coventry* v. *L. B. & S. C. Ry. Co.*, L. R. 5 Eq. 104; *Haynes* v. *King*, 1893, 3 Ch. Div. 439; *Matter of Bateman*, 1899, 1 Ch. Div. 599.) The order of the district superintendent is void because made without the consent of the trustees of the districts sought to be dissolved. (*People ex rel. Light* v. *Skinner*, 159 N. Y. 162.) Section 880 (now 890) of the Education Law does not deprive the courts of this state of jurisdiction in this action. (*People ex rel. Merrill* v. *Cooley*, 75 Misc. Rep. 188; *People ex rel. Underhill* v. *Skinner*, 74 App. Div. 58; *People ex rel. Light* v. *Skinner*, 159 N. Y. 162; *Haley* v. *Whitney*, 53 Hun, 119; *State ex rel. Bidgood* v. *Clifton*, 113 Wis. 107; *People ex rel. School Dist.* v. *Van Horn*, 20 Col. C. A. 215.)

CHASE, J. This action is brought by a taxpayer of former school district No. 7 of the town of Oyster Bay

in the county of Nassau to restrain the defendants from carrying out, perfecting or in any way enforcing an order of the district superintendent of the first supervisory district of Nassau county, comprising the towns of Oyster Bay and North Hempstead, by which said school district No. 7, and also school district No. 10 of said town of Oyster Bay were dissolved and the territory thereof united to union free school district No. 9 of said town. So far as appears before us all persons in any way interested in said districts or either of them assent to and acquiesce in carrying out said order except certain taxpayers of district No. 7. The order was made pursuant to the authority of section 129 of the Education Law (Cons. Laws, ch. 16), which is as follows:

" Any school commissioner (now district superintendent) may dissolve one or more districts, and may from said territory form a new district; he may also unite such territory or a portion thereof to any adjoining school district, except a union free school district whose boundaries are coterminous with the boundaries of an incorporated village or city."

The boundaries of school district No. 9 are not coterminous with the boundaries of an incorporated village or city. The plaintiff challenges the jurisdiction of the district superintendent to make the order, the enforcement of which he seeks to prevent because: 1. It is alleged that consent was not obtained for the dissolution of school district No. 7 and its annexation to union free school district No. 9.

No consent is required for the dissolution, reformation and consolidation of districts pursuant to section 129 of the Education Law that we have quoted. A distinction is made in the Education Law between an alteration of the boundaries of a school district (Education Law, sections 123 to 128) and the dissolution, reformation and consolidation of districts. (Education Law, section

129.)   The distinction existed in the statute of 1894 (Chapter 556), as amended by chapter 264 of the Laws of 1896.   It was frequently recognized and proclaimed by the department of education through the superintendent of public instruction prior to the consolidation of the Education Law in 1909.   (*Matter of Dwyer,* University of the State of New York, Judicial Decisions 1822–1913, page 699; *Matter of Jones,* Id. page 709; *Matter of Stryker,* Id. page 735.)

The legislature with knowledge of the decisions of the department of education when it consolidated ·the school and educational laws continued the distinction between the alteration and the dissolution of a school district. The statutes have been practically construed as contended for by the appellants.   Much weight should be given to the practical construction of a statute by the officers whose duty it is to enforce it.   (*Kings County Lighting Co.* v. *City of New York,* 176 App. Div. 175; *City of New York* v. *N. Y. City Ry. Co.,* 193 N. Y. 543; *Grimmer* v. *Tenement House Dept. N. Y.,* 205 N. Y. 549; *People ex rel. Williams* v. *Dayton,* 55 N. Y. 367.)

The doubt expressed in 1905 in *Matter of Jones (supra)* in regard to annexing the territory of a dissolved district to a union free school district without the consent of the school authorities of such district apparently led to the change in section 9 of title 6 of chapter 556 of the Laws of 1894, as amended by chapter 264 of the Laws of 1896, when in section 27 of the Education Law (Laws of 1909, chapter 21) the words " common or union free school " were inserted for the purpose, as stated in a note of the consolidators, of making the section conform to the usage of the department of education.   Section 129 of the Education Law that we have quoted has been amended to authorize uniting the territory or a part thereof of a dissolved district to any adjoining school district, without

exception or limitation other than that it cannot be united to the territory of a union free school district whose boundaries are coterminous with the boundaries of an incorporated village or city.

2. It is alleged that the territory of school district No. 7 does not adjoin school district No. 9.

The territory of the state of New York as it extends easterly over Long Island is bounded on the north by the territory of the state of Connecticut. The boundary line between the states is specifically stated in chapter 57 of the Consolidated Laws (State Law, section 2). The county of Nassau and the town of Oyster Bay as a part of that county each include a part of the northern shore of Long Island. In *Mahler* v. *Norwich & N. Y. Transportation Company* (35 N. Y. 352, 359) this court say: "We think there is no force in the suggestion, that, if the State owns to the center of the sound, a considerable part of our domain is not partitioned into counties and towns. Even if the statute, in declaring the bounds of the counties bordering on the sound, had limited them, in terms, to the line of low-water mark, it would indicate nothing but the mere fact that the legislature deemed their extension to the exterior water-line of the State a matter of no practical importance; but in the absence of any such limitation, we are clearly of the opinion expressed by this court on a former occasion, that the respective counties and towns, which are bounded generally on the sound, comprehend within their limits the waters between their respective shores and the water-line of the State. This is the usual and reasonable rule in the political apportionment of territory, for the purpose of fixing the limits of civil and criminal jurisdiction." (*People* v. *Hulse*, 3 Hill, 309; *Matter of United Building Material Company*, 137 App. Div. 893.)

Oyster bay as a part of Long Island sound is a land-locked harbor. It opens into Cold Spring harbor on

the east between Center island and a part of the main
land known as Cove neck. The opening is about half
a mile wide. That part of the town of Oyster Bay
surrounding Oyster Bay harbor in 1916 was divided into
school districts. Union free school district No. 9 included
the territory south and west of the harbor. School
district No. 10 included Cove neck and is east of the
harbor. School district No. 6 lies northwest of the
harbor and extends west along the northerly shore of
Long island. School district No. 7 consists. of Center
island and extends north from the opening of the harbor
and is east of a part of the harbor itself. It also extends
southwesterly into and through the harbor until it comes
within about one-half mile or perhaps a little more of
Oyster Bay village in union free school district No. 9.
The shore lines of the harbor along districts Nos. 7 and
9 are separated by the waters of the harbor which are
from one-half mile to a mile or a little more in width.
There is no land connection between district No. 7 and
district No. 9 except over a narrow causeway at the
northwesterly corner of the island leading to school
district No. 6 along the southerly shore of Long Island
sound and from which a highway leads to and through
district No. 9.

Under the Consolidated School Law of 1864 (Laws of
1864, chapter 555, title 6, section 1) it was the duty of each
school commissioner to divide so far as practicable the
territory within his district into a convenient number of
school districts and by section 120 of the Education
Law all school districts organized either by special laws
or under the provisions of a general law are continued
and may be altered or dissolved as therein provided.

The Education Law plainly contemplates jurisdiction
for educational purposes as therein provided over all
of the territory of the state. Even if the boundaries
of the districts mentioned as the same are filed in the

town clerk's office of the town of Oyster Bay are described as along the waters of Oyster Bay harbor, the lands under such waters, a part of the town of Oyster Bay, should for the purposes of the jurisdiction of the district superintendent in the matter now before us be deemed a part of the school districts. It is not uncommon to treat school districts as adjoining for school purposes when they are divided by creeks or other natural boundaries, or by direct reference to the sides of highways or canals. The purpose of the statute in confining the authority to unite districts or parts thereof to such as are adjoining, was to prevent districts being united for school purposes when intervening territory consisting of some other district or districts, or part or parts thereof, wholly separate and divide the districts or parts thereof sought to be united.

No school has been maintained on Center island since 1912. It is asserted that there are but six or seven children of school age residing in the district. Since 1912 contracts have been made from year to year by district No. 7 with union free school district No. 9 by which the latter district has provided school facilities in the schools in its district for the children of school age in district No. 7. The contract price paid by district No. 7 to district No. 9 has varied from time to time, but has not exceeded forty dollars each for such children. The practicability of uniting the territory of district No. 7 with that of district No. 9 for school purposes has been shown by several years of school experience. It is none the less practical for school purposes when all the taxable property included in the territory of the two districts bears its proportionate part of the tax burden than when the children of district No. 7 receive the advantages of the schools of district No. 9 by the payment of a stipulated consideration.

Prior to making the order dissolving said districts the

subject of their dissolution had been investigated by the department of education, and in the order it was stated that " It appears that the sound course to pursue from the standpoint of good school administration and sound business policy is to consolidate school districts 7 and 10 with district 9. The report indicates that there are only seven children in district 7 and that these children have for a long period of time been attending the Oyster Bay school. It further appears that the taxpayers of district 9 are now bearing the burden of educating many of the children residing in districts 7 and 10 and that district 9 contains the homes of a large number of people who are employed by the owners of estates located in districts 7 and 10. It also appears that the village of Oyster Bay which is located in district 9 is the community center of all the people living in these three districts. It is added that the mail of all people in this district is received through the Oyster Bay post office and that the voters of these three districts vote at Oyster Bay." The order necessarily determined as a fact that the districts adjoined.

After the order was made the plaintiff in this action as the sole trustee of district No. 7 appealed to the commissioner of education from the order and from each and every part thereof. He disputed some of the recitals contained in said order and denied the authority of the district superintendent to make the same. After a full hearing and consideration by the commissioner the action of the district superintendent was approved and the appeal was dismissed. (11 State Dept. Rep. 517.)

It is provided by section 890 (formerly 880) of the Education Law that " Any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of

education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever." (Subd. 1.)

It is expressly provided by the section that an appeal may be made in consequence of any action "by any school commissioner (now district superintendent) and other officers, in forming or altering, or refusing to form or alter, any school district." (Subd. 2.) This express grant of power must be considered with the other provisions of the Education Law. By the Education Law the education department is charged with the general management and supervision of all public schools and all of the educational work of the state (Education Law, sec. 20), and the commissioner of education is the chief executive officer of the state system of education (Education Law, secs. 20, 94) and he is by the legislature recognized as having judicial functions. (Education Law, secs. 46, 94, 398, 890, 891, 892.) The authority of the commissioner of education to hear appeals as by the statute provided and the binding effect of his decision and that of his predecessors in authority have been a part of our statute law since 1822. (Laws of 1822, chapter 216.)

This provision was intended as a cheap and expeditious mode of settling most, if not all, of the difficulties and disputes arising in the course of the execution of the School Law. (*Easton* v. *Calendar*, 11 Wend. 90.)

After the decision in *People ex rel. Light* v. *Skinner* (159 N. Y. 162) and by the amendment of 1910 (Laws of 1910, chapter 140) the decisions of the commissioner of education made by him in the first instance were given the same conclusiveness as decisions made by him on appeal.

The purpose of the statute and of the amendment is to make all matters pertaining to the general school

system of the state within the authority and control of the department of education and to remove the same so far as practicable and possible from controversies in the courts.

It has been frequently held that there is conferred upon the executive head of the education department power to review on the petition of a person aggrieved any decision mentioned in the School or Education Law. (*Welker* v. *Lathrop*, 210 N. Y. 434; *People ex rel. Jennings* v. *Finley*, 175 App. Div. 204. See *People ex rel. Board of Education N. Y. City* v. *Finley*, 211 N. Y. 51; *People ex rel. Peixotto* v. *Board of Education N. Y. City*, 212 N. Y. 463, 471.)

The State Constitution was revised and established in 1894 and it provides: " The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." It also provides: " The corporation created in the year 1784, under the name of the Regents of the University of the State of New York, is hereby continued under the name of The University of the State of New York. It shall be governed and its corporate powers, which may be increased, modified or diminished by the legislature, shall be exercised by not less than nine regents." (Constitution State of New York, article 9, secs. 1, 2.) It was ratified by the people with knowledge and appreciation of the history of the free common schools of the state and of the University of the State of New York.

The determination of the question in this case, whether within the provisions of the Education Law said school districts adjoin, was dependent upon an examination of all the facts and circumstances before the superintendent. His determination of that question was not arbitrary, nor wholly without a basis of jurisdiction upon the law and upon the facts, and the court will not set aside his

determination particularly at the instance of a subordinate school officer who has first subjected himself by appeal to the jurisdiction and authority of the commissioner of education and only sought relief from the courts after his failure to succeed in the proceeding specially designed to settle controversies in school matters. . (See *People ex rel. Yale* v. *Eckler*, 19 Hun, 609, 614.)

Even in a criminal case if there is some evidence before a magistrate upon which the judicial mind is called to act in determining the question of the probable guilt of an accused, the magistrate has jurisdiction and the process issued by him is valid as such. (*People ex rel. Perkins* v. *Moss*, 187 N. Y. 410.)

The determination of the commissioner of education upon the appeal involved matters of school administration and policy not without his jurisdiction and his decision is not subject to review by the courts so far as it pertained to such school administration and policy and but incidentally, if at all, affects property rights.

There are several other questions relating to the authority of the plaintiff to maintain this action, but what we have said makes it unnecessary to consider them on this appeal.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN and ANDREWS, JJ., concur; HOGAN, J., not voting.

Judgment reversed, etc.