MILDRED V. S. GWYNNE, Appellant, *v.* BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 3, IN THE TOWN OF HUNTINGTON et al., Respondents.

(Argued April 29, 1932; decided June 1, 1932.)

*Joseph M. Proskauer, Willard N. Baylis, M. E. Harby* and *Eugene Eisenmann* for appellant. The district superintendent had no power to consolidate a school district within his jurisdiction with a school district excluded from his jurisdiction. (L. 1910, ch. 140; Education Law, §§ 121, 122, 123, 126, 130, 136, 170; *East End Trust Co.* v. *Otten*, 225 N. Y. 283; *Bullcck* v. *Cooley*, 225 N. Y. 566; *People ex rel. Cherry* v. *Graves*, 219 App. Div. 563.) Reasonable canons of statutory construction limit the powers of a district superintendent under section 129 of the Education Law to school districts subject · to his supervisory power. (*People* v. *Pelham*, 215 N. Y. 374; *People* v. *Ahearn*, 196 N. Y. 221; *Ewen* v. *Thompson-Starrett Co.*, 208 N. Y. 245.) The decision of the Commissioner of Education upon the appeal by the trustees of the dissolved school districts does not preclude the plaintiff from maintaining the action. (*Matter of Appeal Relating to Union Free School District No. 3, Town of Huntington*, 37 State Dept. Rep. 660; *The Board [No. 6]* v. *The Board [No. 7]*, 76 App. Div. 355; 179 N. Y. 556; *Union Free School District* v. *Village of Glen Park*, 109

App. Div. 414; *Steele* v. *Village of Glen Park*, 193 N. Y. 341; *Bullock* v. *Cooley*, 225 N. Y. 566; *Barringer* v. *Powell*, 230 N. Y. 37; *Matter of Levitch* v. *Board of Education*, 243 N. Y. 373; *People ex rel. Board of Education* v. *Finley*, 211 N. Y. 51; *People ex rel. Hylan* v. *Finegan*, 227 N. Y. 219.)

*Lewis L. Delafield, Jr.*, and *Guy O. Walser* for respondents. The order dissolving a school district and uniting its territory to another district was valid. (*Bullock* v. *Cooley*, 225 N. Y. 566; *People ex rel. Wood* v. *Graves*, 225 App. Div. 176; *People ex rel. Cherry* v. *Graves*, 219 App. Div. 563.) The determination of the Commissioner of Education which affirmed the order of the district superintendent is final and conclusive and not subject to question or review in any place or court whatever. (*People ex rel. Wood* v. *Graves*, 225 App. Div. 176; *People ex rel. Hill* v. *Collins*, 34 How. Pr. 336; *People ex rel. Light* v. *Skinner*, 159 N. Y. 162; *People ex rel. Board of Education* v. *Finley*, 211 N. Y. 51; *Bullock* v. *Cooley*, 225 N. Y. 566; *Barringer* v. *Powell*, 230 N. Y. 37; *Matter of Levitch* v. *Board of Education*, 243 N. Y. 373; *People ex rel. Underhill* v. *Skinner*, 74 App. Div. 58; *People ex rel. Jennings* v. *Finley*, 175 App. Div. 204; *Matter of Birmingham* v. *Graves*, 227 App. Div. 262; *Van Wormer* v. *Mayor*, 15 Wend. 263; *Osterhoudt* v. *Rigney*, 98 N. Y. 222; *People ex rel. Myers* v. *Barnes*, 114 N. Y. 317; *People ex rel. McCabe* v. *Matthies*, 179 N. Y. 242; *People ex rel. Best* v. *Preston*, 62 Hun, 185.)

POUND, Ch. J. This is an action for a declaratory judgment and for the removal of a cloud on the title of plaintiff's real estate. Plaintiff challenges the validity of an order of Leonard J. Smith, district superintendent of schools of the third supervisory district of Suffolk county, made June 17, 1926, without the consent of the

interested districts, whereby common school district No. 2, with which common school district No. 5 had been consolidated and in which her property is located, was dissolved and its territory united to union free school district No. 3 of the town of Huntington. The latter is an adjoining district, having a population of more than five thousand, employing its own superintendent of schools. The order was affirmed on appeal to the State Commissioner of Education by the trustees of the dissolved districts.

In making this order the district superintendent claims to have acted under the authority of Education Law (Cons. Laws, ch. 16), section 129, which provides: "Any school commissioner may dissolve one or more districts, and may from such territory form a new district; he may also unite such territory or a portion thereof to any adjoining school district, except a union free school district whose boundaries are coterminous with the boundaries of an incorporated village or city."

The plaintiff contends that this section, read, not as a single statute, standing alone, but as a part of the Education Law, has not the broad meaning which has been given to it below. An examination of the laws for the government of schools will be helpful in this connection. The towns are divided into school districts. (Education Law, § 120.) The qualified voters of the districts elect school trustees. (Education Law, § 206.) The school districts formerly were embraced in school commissioner districts but the district superintendent of schools has succeeded to the powers conferred on school commissioners (Education Law, § 397) and we now have supervisory districts in the place of school commissioner districts.

" The territory embraced in the school commissioner districts of the state *outside of cities and of school districts of five thousand population or more, which employ a superintendent of schools,*" is organized and divided into supervisory districts. (Education Law, § 381.) Each town

included within a supervisory district elects two school directors. (Education Law, § 382.) The school directors of the several towns *composing a supervisory district* elect the district superintendent. (Education Law, § 383.)

Union free school district No. 3 of the town of Huntington is thus, by the plain language of the statute, wholly outside of the supervisory district for which Mr. Smith was chosen as district superintendent. The question is whether the district superintendent has power to annex a school district included in his supervisory district to an adjoining school district outside such district, limited only by the restriction that he may not unite such a district to a union free school district whose boundaries are coterminous with the boundaries of an incorporated village or city.

Education Law, section 395, defines the general powers and duties of the district superintendent. He is thereby territorily limited to supervision over his own district.

The policy of the law, since the creation of school commissioner districts for the oversight of country schools (L. 1856, ch. 179), has tended generally toward the separation of the methods of supervision of school districts into two groups: the urban groups which have their own superintendents of schools and the more rural districts over which the school trustee exercised original jurisdiction. From the school commissioner districts were excluded first, school districts in cities which had their own superintendent of schools; then *all* cities (L. 1894, ch. 556, tit. V, § 2); then school districts of five thousand population or more which employ a superintendent of schools. If the district superintendent may unite a part of his territory to territory outside his district, he may, by his own fiat, arbitrarily transfer some portion or all of his own supervisory district to an outside adjoining union free school district without the consent of the residents of either district and without a hearing. Thus far the contention that the law permits such action has

been sustained, subject·only to review on appeal to the State Commissioner of Education.

The Education Law (§§ 123–128) provides a procedure for the alteration by consent, or without consent after a hearing, of the boundaries of a union free school district having a population of five thousand or more and employing a superintendent of schools and an adjoining school district in a supervisory district. · The district superintendent may thereby acquire jurisdiction to " make an order altering the boundaries of such districts, and fix in such order a day when the alteration shall take effect." It is urged, however, that a distinction exists between the consolidation of districts under section 129, for which no consent is required, and the alteration of boundaries under sections 123–128 and that it has been so held by this court. (*Bullock* v. *Cooley,* 225 N. Y. 566, 570, 571.)

The question in the *Bullock* case was, however, whether the district superintendent had power, under section 129, to dissolve a school district and annex its territory to a union free school district in his own supervisory district. The answer depended on the ruling of the district superintendent, upheld on appeal by the State Commissioner of Education, that the districts were " adjoining " for school purposes although they were not contiguous. The question now before us for decision did not arise. In that connection the court said: " Section 129 of the Education Law * * * has been amended to authorize uniting the territory or a part thereof of a dissolved district to any adjoining school district, without exception or limitation other than that it cannot be united to the territory of a union free school district whose boundaries are coterminous with the boundaries of an incorporated village or city." (*Bullock* v. *Cooley,* 225 N. Y. at pp. 571, 572.) This statement has been relied upon as an express holding that the acts of the district superintendent herein complained of were not *ultra vires.* Its application should be limited to what was actually decided.

In *People ex rel. Cherry* v. *Graves* (219 App. Div. 563, 566) and *People ex rel. Wood* v. *Graves* (225 App. Div. 176) it was held, largely on the authority of the *Bullock Case* (*supra*), that although a union free school district of more than five thousand inhabitants with its own superintendent of schools was no part of a supervisory district, the court had no power to decide that the district superintendent could not annex thereto a portion of his district under section 129 (*supra*). If section 129 were read so literally throughout, the provision that " *any* school commissioner " may dissolve and unite school districts would confer on a local superintendent a State-wide jurisdiction to dissolve and unite districts. To state such a proposition is to answer it. The palpable meaning of the Education Law is that the district superintendent may act only within the limits of his own supervisory district; that he may not consolidate a part of its territory with a district over which he has no jurisdiction; that he must officiate rather than abdicate; that he may not cut off his responsibilities to suit himself (*Edwards* v. *United States*, 103 U. S. 471, 473); that the practical fair meaning of the entire statute prevails over the literal language of a single section (*Matter of Livingston*, 121 N. Y. 94, 104), and that the explicit language of a later statute should control the general language of an earlier enactment. (*East End Trust Co.* v. *Otten*, 255 N. Y. 283.)

The next question is whether the decision of the Commissioner of Education, directing the affirmance of the order of the district superintendent, upon an appeal by the trustees of the annexed school districts, is final and conclusive so as to preclude plaintiff from maintaining her action.

The decision of the Commissioner of Education upon an appeal by a person aggrieved is " final and conclusive, and not subject to question or review in any place or court whatever " as to all matters over which he has jurisdiction. (Education Law, § 890; *Matter of Levitch* v. *Board*

*of Education*, 243 N. Y. 373; *Bullock* v. *Cooley, supra.*) It was held to be final in this case as between the districts in question in the case of *People ex rel. Wood* v. *Graves (supra)*. When the Commissioner acts on an examination of the facts and circumstances on an appeal properly before him the courts will not review his decision, " particularly at the instance of a subordinate school officer who has first subjected himself by appeal to the jurisdiction and authority of the commissioner." (*Bullock* v. *Cooley, supra,* p. 578.) The fact that the question may have involved the construction or application of a statute does not deprive the Commissioner of jurisdiction as between the parties who invoke his decision. (*Matter of Levitch* v. *Board of Education, supra.*) The corporate entities, the school districts, are, therefore, bound by the decision of the Commissioner and as to them the order of consolidation is lawful and effective.

The right of plaintiff to attack the validity of the consolidation rests on other grounds. As she sues as a landowner to remove as a cloud on title the lien of a tax levied by a school district on property which she contends is without its borders, she is not, if she has proceeded with due diligence, bound by a decision of the school authorities on matters of school administration. Her property rights are directly involved and she may assert them in court. (*Bullock* v. *Cooley, supra,* p. 578.)

The new district was in good faith organized and it has assumed and exercised corporate powers. It is a *de facto* corporation. A *de facto* corporation cannot exist where there is no law authorizing a *de jure* corporation (*Norton* v. *Shelby County*, 118 U. S. 425), but it has never been held in this State that there can be no *de facto* organization under a void act of the Legislature. On the contrary, it has been held that a *de facto* corporation might exist although organized under an act later held void for unconstitutionality. (*Coxe* v. *State*, 144 N. Y. 396, 408.) A *de facto* corporation came into existence under the law as

construed by the school authorities when the consolidated district, formed in attempted compliance with section 129 of the Education Law, assumed corporate powers. Is the existence of such a corporation subject to collateral attack by an individual claiming to be aggrieved?

The rule has been recently stated as follows: If a village has been organized or territory has been annexed to it with color of adherence to existing forms of law and *if there has been user for a substantial time* of the franchise or jurisdiction supposed to be acquired, there arises a corporation *de facto*, whose existence may not be challenged by any one except the State. Color of compliance with the statute does not suffice, however, if user has not followed. If, however, the period of user is too short to establish a *de facto* franchise the legality of the proceeding may be challenged by a private suitor. (*Jarl Co.* v. *Village of Croton-on-Hudson*, 258 N. Y. 303.)

When did user begin? Not before plaintiff's real property was assessed and included in the assessment roll for 1928 for school taxes to be collected for the union free school district No. 3. This action was begun about one year thereafter. Taxes have been paid under protest. The *de facto* district had never exercised its franchise " without resistance or protest " on her part. (*Jarl Co.* v. *Village of Croton-on-Hudson, supra*, p. 310.) She consistently resisted the consolidation. She did not wait " a substantial time " before she attacked its validity. The New York rule permits any one to set up lack of compliance with the law in the organization of a municipal corporation, unless he has estopped himself by his conduct from doing so. (*Village of Lynbrook* v. *Cadoo*, 252 N. Y. 308.) Such estoppel may consist in acquiescence " for a substantial time " in the existence of the new corporation. If the corporation is once permitted to organize, prompt resistance alone justifies individual attack. Otherwise the State alone can challenge its existence. What shall be deemed a reasonable time must to some

extent depend, as a question of fact, upon the circumstances of the case. It may not be defined with precision. (*Matter of Sternberg*, 300 Fed. Rep. 881, 884, 885.) As this consolidation was a nullity and the tax imposed was without authority and plaintiff's attitude was consistently one of protest, she did not delay too long her action to vacate the assessment on her property as a cloud on title.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division. (See 259 N. Y. 634.)

CRANE, LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.