Russell, J.
(dissenting). This is an appeal from an order made at a Special Term of the Supreme Court held in and for the County of Albany on the 23d day of May, 1947, dismissing the proceeding herein which was brought under article 78 of the Civil Practice Act to review two certain orders made by the Commissioner of Education of the State of New York on the 5th day of December, 1946, and April 24,1947, respectively, and on application for a stay of proceedings pending hearing and determination of the appeal.
Prior to the 4th day of May, 1946, conferences were held and informal petitions were circulated in twenty-eight school districts for the laying out of a central school district. Among the districts filing petitions with the Commissioner of Education showing a majority of the qualified voters in favor of being included in the Homer Central District was former Common School District No. 6 of the Town of Preble, Cortland County. This petition of the Town of Preble contained sixty-four quaH *680 fied voters in said district who requested that said district be included in the Homer district.
On April 12, 1946, another petition containing ninety-nine signatures, being qualified voters of Preble District Ño. 6, requested that if the territory within said common school district were to be included in any centralization that it be annexed to the Tully Central School District. After the petition of April 12,1946, was filed with the commissioner and before the Homer _ Central School District was laid out, the Assistant Supervisor of Field Services in the Education Department and the District Superintendent of Schools, went to Preble and had a conference with the Chairman of the Board of Trustees of Preble District No. 6 and other interested parties. It is claimed by respondents Knapp and others that at said conference an arrangement was made by the Assistant Supervisor of Field Services that if the Preble group would go along with the program and offer no opposition to the centralization plan at Homer, although he could not speak for the commissioner, he felt sure the commissioner would set the Preble District No. 6 over into the Tully District after the centralization was accomplished.
On May 4, 1946, the Commissioner of Education, pursuant to the provisions of article 6-B of the Education Law, laid out a central school district which was designated as Central School District No. 1 of the Towns of Homer and others. Said Central School District was comprised of twenty-eight union free and common school districts, among them Preble District No. 6. Petitions were then circulated and filed calling for a vote of the qualified voters of the twenty-eight districts to vote as a unit on the question of centralization.
On June 4,1946, a meeting was held after due notice, at which the qualified voters of the proposed central district voted 801 to 137 in favor of centralization, and also elected a .new Board of Education which took office on July 1,1946.
On July 2,1946, one day after the newly elected Board of Education took office, the members were served with a notice of appeal and petition to the Commissioner of Education signed by five residents of the Preble District asking to have the proceeding at the organization meeting set aside by reason of alleged false and fraudulent representation made to some of the voters in District No. 6 of the Town of Preble, that a new election be held and that all proceedings be stayed pending a new election.
On December 5, 1946, the Commissioner of Education made a decision and order by which he held there was “ no legal basis upon which to set aside this meeting ”, but further ordered that *681 the proceeding be continued for the purpose of disposing of the issues raised in connection with the disposition of the territory comprising District No. 6 Preble. Said order further provided:
“ It Is Ordered that the board of education of Central School District No. 1 Towns of Homer, et al., give notice of a special district meeting of the voters of District No. 6 Preble to be held in the school house in such district not less than 15 days nor more than 30 days subsequent to the date of this order, to set upon the following resolution, such action to be taken by secret written ballot:
“ Is it your desire that the boundaries of the Homer Central School District be altered by transferring the territory comprising former common school district No. 6 of the Town of Preble to the Tully Central School District? ”
By an order dated the 31st day of December, 1946, the commissioner stayed all acts and proceedings of the Board of Education of Central School District No. 1 of the Towns of Homer and others pending "an argument relative to claims raised by the order of December 5,1946.
On the 24th day of April, 1947, the commissioner denied a motion for a reargument and for the reopening of his decision of December 5, 1946, vacated the order of December 31, 1946, and directed the Board of Education of the Central School District No. 1 of the Towns of Homer and others to comply with his order of December 5, 1946, to call a special meeting of the voters of the existing District No. 6 of thé Town of Preble for the purpose outlined in his order. The Board of Education of the Central School District No. 1 of the Towns of Homer and others failed to comply with the commissioner’s order of December 5, 1946.
After his decision of April 24,1947, as stated above, the board still refused to call a meeting pursuant to his order of December 5, 1946, and sought the aid of this court to negate said order.
The question, therefore, before this court is whether or not the commissioner exceeded his legal authority in making the said orders of December 5, 1946, and April 24, 1947.
Section 890 (now § 310) of the Education Law provides as follows: “ Any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, *682 and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action: • ♦ *
“ 2, By any school commissioner and other officers, in forming or altering, or refusing to form or alter, any school district, or in refusing to apportion any school moneys to any such district or part of a district; • • *
“ 7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools.”
In reference to appeals, petitions or proceedings, the commissioner has the power “ To make all orders, * * * which may, in his judgment, be proper or necessary to give effect to his decision.” (Education Law, § 891, subd. 4, now § 311, subd. 4.)
Pursuant to subdivision 2 of section 94 (now § 305, subd. 2) of the Education Law, the commissioner is charged with the following powers and duties: “ He shall have general supervision over all schools and institutions which are subject to the provision of this act, or of any statute relating to education, and shall cause the same to be examined and inspected, and shall advise and guide the school officers of all districts and cities of the state in relation to their duties and the general management of the schools under their control.”
Pursuant to subdivision 1 of section 95 (now § 306, subd. 1) of the Education Law, the commissioner has the power, after hearing and'proof to his satisfaction, that a school officer has “ wilfully disobey [ed] any decision, order or regulation of the regents or of the commissioner of education, [to] remove such school officer from his office.”
Section 96 (now §. 308) of the Education Law empowers the commissioner as follows: ‘ ‘ The commissioner of education shall also have power and it shall be his duty to cause to be instituted such proceedings or processes as may be necessary to properly enforce and give effect to any provision in this chapter or in any other general or special law pertaining to the school system of the state or any part thereof or to any school district or city. He shall possess the power and authority to likewise enforce any rule or direction of the regents.”
These vast powers as provided in the foregoing section were vested in the Commissioner of Education in order to beneficially and expeditiously determine all matters of school administration and policy. His determination on all such matters is final *683 and not subject to review by the courts. (Bullock v. Cooley, 225 N. Y. 566, 578; Matter of Levitch v. Board of Education, 243 N. Y. 373, 375.)
It is clear from these statutory provisions that the commissioner had the power to make the orders of December 5, 1946, and April 24,1947.
However, in the instant proceeding facts and circumstances appear, unlike those in the cases cited above, which carry this matter into the law of equity. In corroboration of the arrangement which was made at a conference held at the home of the Chairman of the Board of Trustees, Preble No. 6, between the representatives of the commissioner and interested parties of Preble No. 6, the following letter was sent to Mr. Harris, Assistant Supervisor, Bureau of Field Service, by Elmo B. Bofe, trustee of School District No. 6, Preble:
“Preble, N. Y., May 2, 1946
Mr. Jambs A. Harris
Asst. Supervisor Bureau of Field Services
Education Department
Albany 1, N. Y.
Dear Me. Harris :
When you were in Preble a few days ago you suggested to us that a copy of a recent petition signed by a large majority of the voters of our school district be forwarded to Mr. Scott, Chairman of the Bapp Committee, and in pursuance with your suggestion a copy of this petition has been sent to him.
In order that there be no misunderstanding as to the substance of our conversation I wish to restate our understanding of the same. You have suggested to us that we cooperate in the laying out of the Homer School District by withholding any further objection to being included within its bounds and that after the Homer district is organized we will be permitted to be set over into the Tully Central District in accordance with the wishes of the voters of our district.
If I have misinterpreted our conversation in any way, will you please advise me?
Sincerely yours,
Elmo B. Bofe.”
An answer from the State Education Department was sent by, Mr. Francis E. Griffin, which read as follows:
*684 ' - ■ “ The University of the State of New York
The State Education Department Albany 1
May 6, 1946
Mb. . Elmo B. Bofe
Chairman, Board of Trustees ' .
Preble Dist. No. 6 __
Preble, New York
Dear Mr. Bofe :
-• 'Your letter addressed to Mr. Harris has been received during his absence from the office.
Mr. Harris has reported concerning his visit to your district and I see nothing in contradiction in that report to what you have stated in your letter. We have no objection to this arrangement.
Sincerely yours,
FEG: gb • Francis E. Griffin.”
It is evident from the statements made by the representatives of the Education Department to the chairman of the Board of Trustees of Preble No. 6 and other parties of Preble, that the qualified voters of the Town of Preble were being persuaded against their wishes to vote in favor of the centralization of the Homer Central District under pretense and upon the 'understanding that after they had so voted the Preble District 1 would be set over into the. Tully District.
At .the conference held at Mr. Bofe’s house between the representatives of the commissioner and the representatives of the Town of Preble No. 6, it was suggested that some one in Homer should be advised of the arrangement that had been made “ as it. might change their plans as to the size of their proposed building, etc.,” and they were assured that that would be done, it nowhere appears in the record that such advice was imparted.
In the commissioner’s decision of December 5,1946, he states as-follows: “ Both petitions have duplicate names signed to them and it is not now clear to me whether or not the representations made to my representatives at the meeting aforesaid represented the views of the majority of the people of this district.” This statement seems strange, because before this decision was made and before the order was made which laid out the Central ¡District, there were on file in his office the two petitions above ■referred to; and the conference had been held between the com;missioner’s representatives and the Chairman of the Board' of ■Trustees and others of Preble No. 6, on April 25, 1946.
*685 — ......... ... I ... ----------------------- I, ■— I n I r>
It appears that the Homer Central School District has been operating with Preble No. 6 included, since July 1, 1946; has issued bonds for the purchase of school buses; has levied and collected taxes, and otherwise functioned for over a year, all being matters of public record.
It also appears that children up to and including the sixth grade are attending the same school in Preble, that they have been for many years, and would continue- to attend said school regardless of which Central School District the Preble District No. 6 were to join.
The high school students of District No. 6 of the Town of Preble have been attending school at Homer for many years. Children of District No. 6, Preble, who are in the seventh and eighth grades receive instructions in the same building in Homer.
The petitioners claim that fraud was practiced upon the other twenty-seven districts by the arrangement made between the representatives of the commissioner and representatives of Preble No. 6 and consequently, underlying the orders issued by the commissioner were elements of deceit and concealment which resulted in a wrong perpetrated upon the other districts. If it were a proper procedure to order by resolution a vote to be retaken in one district, it would naturally follow that it could be required in any number of the districts upon proper petitions, that had voted to form the Central School District.
The equitable doctrine of fraud “ involves an element of deception through which another is misled to his injury.” (2 Lawrence on Equity Jurisprudence, § 841, p. 926.)
“ In general it may be said to exist whenever the situation is such that one person knows, or should know, that another is about to act upon a mistaken assumption, either of fact or legal right, to his injury, the former being conversant with the true facts, having an interest in the subject matter, actual or potential, and an opportunity to enlighten the other and avert the injury, and knowing or having reason to believe that his silence is a factor contributing to the other’s misapprehension.” (2 Lawrence on Equity Jurisprudence, § 846, p. 933.)
It was never the intent of the Legislature to permit the authority vested by it in the Commissioner of Education to be carried into effect by means of deception and concealment to the disadvantage or injury of another.
Although the courts do not invade the field of discretion of an administrative officer, nevertheless, such discretion may be restrained when it appears to be unfair, misleading or arbitrary. (Matter of Small v. Moss, 279 N. Y. 288, 299.)
*686 • The orders made by the commissioner were merely the final result of an artifice put into motion several months earlier by representatives of his office and, therefore, the original deception carried through into the final orders.
Therefore, due to all the facts and circumstances that arose in the formation of the Homer Central School District, that part of the order of December 5,1946, containing the resolution was in its nature arbitrary in the sense that it was the result of an artifice, and also the order of April 24, 1947.
The order of the Special Term should be reversed and the order applied for by the appellant granted, with $50 costs and disbursements.
Í Heffbbnan and Brewster, JJ., concur with Foster, J.; Russell, J., dissents in an opinion, in which Hill, P. J., concurs.
Order affirmed, without costs.