HON. ARTHUR LEVITT State Comptroller
This is in reply to your letter of March 24, 1977, in which you seek clarification of my opinion of April 26, 1976 (1976 Atty Gen Opns 40).
You inquire specifically whether my opinion permits a determination that the courses of study deemed to come within the criteria of Education Law § 6208(3), as in effect 1966 to 1972, include all evening, extension and summer session courses to the extent they were attended by non-matriculated students.
In my opinion to the New York City Board of Higher Education dated April 26, 1976, I concluded:
 "It is, therefore, my opinion that, even though the City community colleges have a unified budget which combines day and evening sessions, thus making the evening sessions' costs eligible for State aid, the particular courses referred to in section 6208(3) are required to be separately financed and are not eligible for State aid . . ."
For the meaning in 1966-1972 of the portion of the text of Section 6208(3) describing the purpose for which instructional fees were to be used, reading as follows:
 "a special fund to be administered by the trustees of each such college in furnishing and conducting technical, professional and special courses of study and other educational advantages, including service to non-matriculated students, exclusive of regular undergraduate courses for resident matriculated students leading to baccalaureate degrees",
it is appropriate to consider the interpretation placed upon the text by the Board itself prior to 1966. The statute derived from Education Law § 1145-a, enacted by L. 1932, ch. 570; and the portion quoted above remained unchanged from 1932 until the repeal of Section 6208(3) by L. 1972, ch. 464, § 9.
If the Board of Higher Education consistently interpreted the above text to mean evening, extension and summer session courses to the extent attended by non-matriculated students, your determination may properly adopt this interpretation. Evening and summer session costs eligible for State aid would then be limited to the costs attributable to matriculated students only. Budgetary and cost accounting practices of the community colleges in the period 1966-1972 may complicate the necessary computations but, of course, cannot constitute a bar to reaching the results mandated by the Education Law.
I find that the minutes of meetings of the New York City Board of Higher Education held prior to the period in dispute reveal that the Board did interpret Section 6208 to require the financing of evening, extension and summer session courses out of instructional fees to the extent they were attended by non-matriculated students. The following excerpts and references are not exhaustive but suffice to show this practical construction.
Instructional Fees As Source of Financing of Evening Sessions
The Chairman of the Board's Committee on Finance and Facilities explained the fee funds as follows in 1950 (Minutes Oct. 23, 1950, page 507, Cal. No. 3):
 "Fees collected from students by the City colleges are divided into two categories.
 "(a) Instructional Fees include mainly fees received as tuition from special students, non-matriculated students, graduate students and those in Adult Education courses.
 "Tuition fees included in this group are deposited with the Comptroller of the City of New York to the credit of the individual colleges. Expenditures are made on lines established in the regular City budget, on certificate of the Budget Director and on authorization by the Board. Disbursements are made in the same manner as tax levy funds. These evening and extension sessions tuition fees where deposited by the colleges with the City go into a special fund in the name of each college. Balances unexpended at June 30th of each year are necessary for the financing of evening and extension courses in the succeeding fiscal year. Section 6208 of the Education Law provides that any balances unappropriated by the Board at the end of the succeeding fiscal year revert to the city to the credit of the general fund.
 "(b) Non-Instructional Fees consist of laboratory fees, library fees, breakage fees, entrance examination, transcript and miscellaneous student fees." (emphasis supplied)
Similar acknowledgement that Section 6208 requires the use of instructional fees to finance evening and extension courses is found, e.g., in the fee fund annual report in 1955 (Minutes Oct. 24, 1955, page 574, Cal. No. 3), in the fee fund budget for 1956-57 (Minutes June 18, 1956, page 331, Cal. No. 9) and in the fee fund budget for 1957-58 (Minutes June 17, 1957, page 249, Cal. No. 4).
Costs Allocated Between Matriculated and Non-Matriculated Students
The minutes of meetings of the Board of Higher Education indicate that the use of instructional fees to finance evening and extension sessions pursuant to Section 6208 was, however, limited to the allocable cost of such courses attributed to attendance by non-matriculated students.
Evening sessions were actually financed from three sources: from the City's tax levy funds for matriculated students, from Federal funds for veterans studying under the G.I. Bill, and from the fee funds for non-matriculated students. This is shown, for example, in the evening session budget approved by the Board of Higher Education for 1951-52, which stated:
 "Resolved, that the request of City, Hunter, and Brooklyn Colleges for the School of General Studies (Evening Session) be approved and that the financing of the School of General Studies be allocated in accordance with the percentage of matriculated students, veterans and non-matriculated students. . . ." (Minutes Dec. 18, 1950, page 630, Cal. No. 3).
It was a "complicated" process, as explained in detail in the Budget Request for 1956-57:
 "The Schools of General Studies and Evening Sessions provide for several types of students. There are matriculated students who do not pay fees: they meet the same standards as day session students. There are special and non-matriculated students who pay fees. There are a few veterans. An estimate is made of the total number of student credits for each of these groups of students. The amounts required for fully matriculated students are presumably paid by tax levy funds. The amounts for non-matriculated students are payable from instructional fee funds. The amounts required for veterans on benefits are payable from Federal fees. The amounts required for limited matriculants and special students are divided equally between instructional fees and City tax levy. The process is a complicated one and very often estimates made by the colleges and the Board are significantly different from the estimates made by the Budget Director." (Minutes Dec. 19, 1955, page 719, Cal. No. 2).
The same wording appears in the Budget Requests for fiscal year 1957-58 (Minutes Dec. 17, 1956, page 679, Cal. No. 2), for 1958-59 (Minutes Dec. 16, 1957, page 604, Cal. No. 3), for 1959-60 (Minutes Dec. 15, 1958, pages 592-93, Cal. No. 2), and for 1961-62 (Minutes Dec. 19, 1960, page 646, Cal. No. 1).
Self-Sustaining Evening Sessions At Community Colleges
Although some of the statements quoted ante predated the formation of evening sessions at the New York City community colleges and were directed to the senior colleges, the Board applied the same principles to the financing of evening sessions at the community colleges.
At first the evening sessions were supported entirely by tuition. As to Staten Island Community College, see the resolution authorizing the formation of an evening session (Minutes Dec. 17, 1956, page S-38, Cal. No. 4[b]) and the budget requests for 1958-59 (Minutes Dec. 16, 1957, page S-48, Cal. No. C3), for 1960-61 (Minutes Dec. 21, 1959, page S-74, Cal. No. C21), for 1961-62 (Minutes Dec. 19, 1960, page S-75, Cal. No. C1), for 1962-63 (Minutes Dec. 18, 1961, page S-99, Cal. No. C2), and for 1963-64 (Minutes Nov. 19, 1962, page S-93, Cal. No. C2). Evening sessions at Bronx Community College and at Queensborough Community College were likewise authorized on a self-supporting basis (respectively Minutes June 15, 1959, page S-39, Cal. No. C-21[b] and Minutes Sept. 23, 1963, page S-72, Cal. No. C30).
As late as the Spring of 1964, matriculated students at the New York City community colleges, unlike their counterparts at the senior colleges, were required to pay tuition (e.g. Minutes Jan. 20, 1964, page S-3, Cal. No. C6). By the Fall of 1964, however, this was no longer required and the financing of the evening sessions was modified accordingly, with instructional fees financing the courses to the extent they were attended by non-matriculated students and the City's tax levy funds paying the share of the matriculated students. The parallel to the senior colleges was now complete (see ante). It appears that partial tax levy support for community college evening sessions was established by the time the Board discussed the community college budgets for 1964-65:
 "The President's report was noted that the Mayor's Executive Budget for 1964-65 . . . covers services for Day Session and Evening Division matriculated
students". (Minutes May 18, 1964, page S-67, Cal. No. 68). (emphasis added).
Supporting the above findings is the fact, reported in your letter, that prior to 1966 the community colleges accepted the allocation of State aid for matriculated students only. For example, you submitted the Operating Budget Request for 1964-65 for Staten Island Community College, which states on page 6 of schedule B:
 "Evening Session is part of the regular budget to the extent of financing the educational costs of matriculated students. Non-matriculated students are provided for under a budget financed solely from fee income and not included here."
Summer Sessions
Board minutes prior to 1966 indicate that the financing of the cost of non-matriculated students at the summer sessions was handled in the same manner as in the case of the evening sessions. For example, the budget for fiscal year 1951-52 as presented to the Board read:
 "Resolved, that the requests for the Summer Sessions be approved, and that the financing of the Summer Sessions be allocated in accordance with the percentage distribution of matriculated, veterans and non-matriculated students as follows" (emphasis added)
followed by a breakdown for tax levy, Federal funds and fee funds. (Minutes Dec. 18, 1950, page 631). Such was the Board's reading of Section 6208 in the context of summer session financing.
At the community colleges, at least through 1964 the summer sessions were financed entirely from student fees (e.g. Minutes April 16, 1962, page S-30, Cal. No. C-2; Minutes Sept. 24, 1962, page S-65, Cal. No. CA; Minutes April 22, 1963, page S-21, Cal. No. CA). See also the 1963-1964 fee fund budget in Minutes of June 17, 1963, page S-52, Cal. No. C11A.
Significance Of Administrative Interpretation Of § 6208
In interpreting Education Law § 6208(3), great weight should be given to the Board's own consistent administrative practice in construing that section prior to 1966, as the relevant portion of the text remained unchanged after 1966. Our courts traditionally respect a "well-settled construction of the law." General Fireproofing v. New York State NationalBank, 225 N.Y. 180, 186 (1919); Bullock v. Cooley, 225 N.Y. 566, 571
(1919). The construction given statutes and regulations by the agency responsible for their administration, if not irrational, is upheld.Howard v. Wyman, 28 N.Y.2d 434, 438 (1971).
Arthur Kahn, General Counsel to the New York City Board of Higher Education, acknowledged the foregoing in a memorandum dated December 21, 1971 (Exhibit 2 to Request to Attorney General for Supplementary Opinion, submitted by Mary Bass, General Counsel and Vice Chancellor for Legal Affairs, City University of New York, dated December 16, 1975):
 ". . . Chapter 782 (Section 6208[3]) made provision that instructional fees received by the community colleges (which do not go to City University Construction Fund) should be deposited with the Comptroller to be credited to each college and be drawn upon by such college.
 "There is no evidence whatsoever that these amendments were intended to change the practices or formula for state aid to the community colleges obtaining prior to enactment of Chapter 782 in 1966.
. . . .
 ". . . The procedure and construction of the law followed for so many years by the parties should continue to govern."
Apart from the weight of the Board's own settled view of Section 6208, to take the position that no "technical, professional and special courses of study and other educational advantages, including service to non-matriculated students" within the meaning of Education Law Section6208 existed prior or subsequent to 1966 would be to render the statute completely meaningless. Such a result is contrary to accepted statutory construction:
 "A court should not impute to the Legislature an intent to enact an ineffective statute, and should avoid a construction which would render a statute ineffective or purposeless . . . Courts should be astute to find out some meaning to every statute, and should not impute to the legislature the doing of a senseless thing; and if an intent can be spelled out fairly from the words effect should be given to that intent, although not artistically expressed." [citing cases] 56 NY Jur, Statutes § 203.
I do not believe that any of the foregoing is in conflict with Section 602.4 (Financing evening and extension programs) of the State University Regulations. Evening and extension programs can, under certain conditions, be eligible for State aid under 602.4 (a) (1), i.e. for matriculated students. The provisions of that section do not address the question of non-matriculants and cannot be presumed to intend any contradiction of the Education Law.
The Comptroller's determination need not be affected by the fact that non-matriculated and matriculated students may be enrolled in the same classes. Although in Section 6208 the Legislature referred to "courses" for non-matriculated students, rather than to costs, we are bound to search out the intent of the enactment notwithstanding that it may be imperfectly drawn. One Hundred Three Park Avenue Co. v. Exchange BuffetCorp., 242 N.Y. 366, 374 (1926).
In making your determination, approximations may be used where costs can no longer be precisely determined. For fiscal year 1966-67, the expense budgets for community colleges provide cost breakdowns between matriculated and non-matriculated students in evening and summer sessions. (See Exhibit 9 to Request to Attorney General for Supplementary Opinion, dated Dec. 16, 1975, supra). These figures, adjusted by appropriate auditing procedures, can form the basis for computation of the correct amount of State aid to community colleges. For the other years in dispute, in which the budgets distinguish only between evening and extension, summer, and day sessions, costs may have to be allocated by a formula based on comparative enrollments.
It is, therefore, my opinion that the courses of study deemed to come within the criteria of Education Law § 6208(3), as in effect 1966-1972, include all evening, extension and summer session courses to the extent they were attended by non-matriculated students.