State of Iowa ex rel. John Thie et al., Appellants, v. Consolidated Independent School District of Mediapolis et al., Appellees.

**ELECTIONS:** Conduct of Elections—Keeping Polls Open. Keeping the polls open a short time after the legal closing time will not invalidate an election, especially when the ballots received during said time were inconsequential.

**SCHOOLS AND SCHOOL DISTRICTS:** Organization—Belated Quo Warranto. Quo warranto will not lie to review irregularities in the organization of a consolidated school district in favor of relators who deliberately delay their action until the district is organized, the officers elected, the taxes levied, and the school organized, and the district is on the eve of determining a bond issue.

*Appeal from Des Moines District Court.*—Oscar Hale, Judge.

February 7, 1922.

Rehearing Denied May 8, 1922.

Action in quo warranto to test the validity of a public corporation known as the Consolidated Independent School District of Mediapolis Iowa, and to oust officials elected to offices in said corporation. The opinion states the facts. The trial court dismissed the petition and taxed the costs to the plaintiffs, who appeal.—*Affirmed.*

*J. C. McCoid* and *Seerley & Clark,* for appellants.

*La Monte Cowles* and *W. J. McConnell,* for appellees.

De Graff, J.—The events as disclosed by the chronology of this case are as follows: (1) In December 1919, a proper petition describing a legally defined area was filed with the county superintendent of Des Moines County, Iowa for the creation of a consolidated independent school district to be known as the Consolidated Independent School District of Medi-

apolis, Iowa.  (2)  Objections to the petition were duly filed by certain persons with the county superintendent and were by·him overruled.  (3)  An appeal was taken to the county board of education and upon a hearing the action of the county superintendent in the premises was affirmed.  (4)  On January 13, 1920 an election was held within the said proposed district upon due publication of notice.  The vote was canvassed and certified disclosing 245 votes in favor of and 82 votes against the proposed consolidation.  (5)  Thereafter the consolidated district was duly organized and in March 1920 the regular annual election in said district was held.  (6)  On April 27, 1920 a proposition to vote bonds in the sum of $185,000 was submitted to the voters of said consolidated district for the purchase of a school site and for the construction and equipment of a ·new schoolhouse.  This proposition carried by a large majority.

On said date the relators herein filed their application asking for leave of court to institute quo warranto proceedings, the county attorney having refused to commence said action.  Consent was given and the petition was filed.

In the light of the proceedings had prior to the commencement of this suit it is necessary to· make answer to the complaint lodged by relators against the formation of the district in question.  Upon what theory is their petition predicated?

In the first place it is contended that the polls remained open after the legal closing hour on January 13, 1920 the day appointed for voting on the proposed consolidation.  Relator

1. ELECTIONS: conduct of elections: keeping polls open.

Charles McDonald was a judge at this election and he certified that the polls closed at 6 o'clock P. M.  Furthermore it is shown that but three votes were cast within the disputed time, but the result of the election was not affected by these votes.  The inadvertence of judges of election in permitting the polls to remain open for a few minutes after the closing hour does not invalidate an election.  The complaint is purely technical and under the evidence no prejudice resulted.  *Chambers v. Board of Directors,* 172 Iowa 340.

It is further alleged by relators that by reason of fraudulent statements and promises by certain persons to the voters of

Harmony District included within the proposed territory, sufficient votes were obtained thereby to change the result of the election. The petition charges:

"Prior to the election interested parties from the town of Mediapolis, to wit: Mr. Eland, Mr. Walker, Mr. Osborn and Mr. Ferris, attended a public meeting held at Harmony Independent District and publicly promised the voters of said Harmony School District or a portion thereof, that if the voters in a portion of Harmony District would vote for said consolidation, they would have one half of said district released from said consolidated district and they would be permitted to cease to be a part of the territory within the consolidated independent district, and that said promise was made for the purpose of carrying the vote of the territory outside of the town of Mediapolis, and petitioner states that by said fraudulent promise a sufficient number of votes was obtained in favor of consolidation and without said promise a majority of the votes outside of the said town of Mediapolis would have been against said proposition of consolidation."

The evidence fails to support this allegation. It appears that a public meeting was called in the Harmony District by a Mrs. William Mehaffy. It was not official, nor was it directed or authorized by any officer or officers of the county or the school districts. Those in attendance including the county superintendent were present at her invitation. It was not a secret meeting but called for the purpose to discuss the proposed consolidation and to give an opportunity to all to express their views for or against the proposition. It was debated pro and con. There were present those in favor and those opposed. Relator John Thie was present. It is idle to claim that under the circumstances there was any conspiracy intended or fraud practiced as charged by the relators. No one occupied the vantage ground. Every voter at the election residing within Harmony District who was called as a witness testified he was not influenced by anything that was said or done by anyone at the meeting in question. No one was deceived, no one could have been.

This appeal merits a short opinion and the determinative

issue is the laches of the relators in the commencement of this action.   Under recognized principles of both law and equity they are estopped to complain of any irregularity if such in fact ever existed.   With full knowledge relators remained silent and permitted the organization of the district; witnessed the annual election in the following March; allowed the inauguration of a central school system; knew that the board of directors was entering into contracts with teachers and that taxes were being levied upon the property of the entire district, and finally upon the day a bond issue was voted asked leave of court to commence this cause of action.   A recognition of such a right under the circumstances would cause irreparable injury to the district.   *Molyneaux v. Molyneaux*, 130 Iowa 100; *Nelson v. Consolidated Ind. Sch. Dist.* 181 Iowa 424.

2. SCHOOLS AND SCHOOL DISTRICTS: organization: belated quo warranto.

It is not the policy of the law to permit private persons to call into question the corporate existence of an agency of the state under the facts disclosed by this record and especially so when it is not alleged that the relators are voters, taxpayers, or residents of the district.

The justification for a rule or principle of law is to assist in bringing about a certain desirable social status, and both makers and interpreters of the law should have this thought articulately in mind.   Law is the concrete expression of the ethical doctrine of utility—the greatest good for the greatest number.   Our government recognizes the rule of the majority, and the will of the majority finding expression in the manner and form provided by law must not be thwarted for slight or transient reasons.   The trial court was fully justified in dismissing plaintiff's petition and taxing costs to relators.   Wherefore the judgment entered is—*Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.