Argued October 18; affirmed November 22, 1932

WILL ET AL. *v.* DISTRICT BOUNDARY BOARD OF
YAMHILL COUNTY ET AL.

(16 P. (2d) 24)

*B. A. Kliks,* of McMinnville, for appellants.

*Loyal M. Graham,* of Forest Grove (Earl A. Nott, District Attorney, of McMinnville, on the brief), for respondents.

CAMPBELL, J. On November 9, 1931, plaintiffs filed their complaint herein, asking that the court enjoin the district boundary board of Yamhill county from canvassing the vote cast at an election held on November 2, 1931, in a proposed union high school district and from declaring said group of school districts a union high school district. In their complaint, they allege many social and economic, as well as some legal, reasons why a temporary injunction should be issued, and on final hearing, be made permanent. On this showing a temporary injunction was issued.

The answer of the defendants, in effect, denies that there are any legitimate, social, economic or legal reasons why the injunction should have been issued and prays for its dissolution.

Upon hearing, the circuit court dissolved the injunction and dismissed the suit. Plaintiffs appeal.

The main question presented is the legality of the organization of union high school district No. 4, in Yamhill county.

The statute (section 35-3703, Oregon Code 1930) providing for the organization of union high school districts is as follows:

"Whenever two or more contiguous school districts * * * desire to consolidate for the purpose of forming a union high school district, and 10 or more of the legal voters in each of said districts shall have filed with the district boundary board of the county in which said districts are respectively situated, a petition signed by each of said voters and directed to said board that said districts, * * * specified in said petition be united for high school purposes only, which petition shall specify the districts * * * proposed to be so united and the site for the buildings of said proposed union high school district, the district boundary board of said county, * * * shall cause notices of the hearing of said petitions by the board * * * and that remonstrances against the formation of said union high school district may be filed as hereinafter provided, to be posted in three conspicuous places in each of said school districts by the clerk thereof for a period of 20 days prior to the date upon which said petitions are to be considered and acted upon by said board * * * provided, that it shall not be necessary in any such district to require more than one-third of the legal voters to sign such petition; * * * If 10 or more legal voters in any of said districts * * * shall, at any time before the date for the hearing of said petitions, file with the district boundary board * * * their written remonstrance, signed by each of them, against the formation of said union high school district, the district boundary board shall proceed to give notice, * * * of an election to be held in all the districts proposed to be united, * * * for the purpose of submitting to the legal voters therein the question of the formation of such union high school district. If no such remonstrance is filed with said district boundary boards, * * * prior to the date set for hearing said petitions for the formation of a union high school district by said boundary

board &ast; &ast; &ast; the said board &ast; &ast; &ast; may thereafter proceed to unite said school districts and parts of districts into a union high school district for high school purposes only. In the event that a remonstrance &ast; &ast; &ast; has been filed &ast; &ast; &ast; the district boundary board &ast; &ast; &ast; shall, within 10 days after the date of the hearing upon the petitions by said boundary board, direct the respective school boards of the districts proposed to be united, &ast; &ast; &ast; to state in the notice of the next annual school meeting or election in said school districts, or at a special meeting or election &ast; &ast; &ast; to be designated by said boundary board &ast; &ast; &ast; that the question of uniting said school districts &ast; &ast; &ast; for high school purposes only, thus forming a union high school district, will be submitted at said election. &ast; &ast; &ast; the vote on the question is to be by ballot, and the ballot shall have written or printed thereon the words:

  " 'For Union High School — Yes'
  " 'For Union High School — No.'

&ast;   &ast;   &ast;   &ast;   &ast;

"If the vote is taken in polling places previously designated by the school board, the judges of the election shall accept the votes, and the clerk of election shall record the names of the voters. &ast; &ast; &ast; If the tally sheet is kept by a clerk of election, the clerk and the judges shall certify to the school board the result of the vote on this question, &ast; &ast; &ast;. The tally sheet, poll list and ballots shall be placed in a sealed package by the district clerk, who shall indorse thereon the number of the district and the date of the election. Such sealed package together with a statement of the result of the election, signed by the school clerk and chairman of the school board, shall be forwarded within five days to the district boundary board, addressed to the county school superintendent as a member thereof. Within 10 days after receipt of the sealed returns from the district, the district boundary board shall open the sealed packages and canvass the votes. If the board shall determine that a majority

of all votes cast on the high school subject is in favor of uniting such districts for high school purposes, providing, however, that the majority of all votes cast in a majority of districts shall be in favor of such proposition, and provided that the removal of no standard high school is involved, then said board shall declare such union high school district regularly organized, * * *. If the district boundary board shall determine that a majority of all votes cast or a majority of the votes cast in a majority of the districts, other than such district or districts maintaining a standard high school, is not in favor of uniting said district for high school purposes, then said board shall immediately notify the respective school boards concerned that the proposition is defeated. If the district boundary board shall determine that a majority of all votes cast on the high school subject in the districts other than those maintaining a standard high school, provided, however, that a majority of all votes cast in a majority of all such districts shall be in favor of such proposition, then the district boundary board shall declare such union high school district regularly organized as to such district, only, excluding such district, or districts, maintaining a standard high school in which last district or districts the proposition failed to carry. The ballots, tally sheets and poll lists shall be kept on file in the office of the county superintendent for a period of one year.''

Thus it will be seen that in order to organize a union high school district the law requires that, at the election held for that purpose, a majority of all the votes cast on the high school subject, a majority of the votes cast in a majority of the districts, and a majority of the votes cast in a majority of the districts other than the district maintaining a standard high school.

On November 12, 1930, school districts Nos. 4, 20, 25, 33, 49, 94, in Yamhill county, filed due and legal

petitions properly signed by the required number of legal voters, with the district boundary board of Yamhill county, desiring to be consolidated for the purpose of forming a union high school district. These districts will be hereinafter referred to as the Amity group. The district boundary board thereupon gave due and legal notice, for the required length of time, that said petitions would come up for hearing before said board on January 7, 1931, and up to that date, remonstrances might be filed against said petitions. On the date of hearing, remonstrances were filed against such consolidation. It was also discovered that district No. 4 (Amity) maintained a standard high school and that an election had been held in that district for the purpose of determining whether a majority of the voters of said district was in favor of said consolidation but that the notice calling said election had not been published for a sufficient length of time prior thereto.

The district boundary board thereupon adjourned the hearing to February 4, 1931, without taking other action on said petitions. On February 2, 1931, district No. 4 (Amity) held an election, after legal notice for the required length of time had been given, at which election a majority of the votes cast was in favor of said consolidation. That fact was duly reported to the district boundary board. The district boundary board met February 4, 1931, pursuant to adjournment, and again adjourned hearing on the Amity group petitions over to February 5, when they again met pursuant to adjournment and again adjourned the matter over to February 6, at which time they met and adjourned to February 14, when they met pursuant to said adjournment and took up and disposed

of the petitions by setting a date for a special election to vote on the question of consolidation and directing the respective school boards to give the necessary notices to that effect. Said notices were properly published by the respective school boards. There is some dispute, or rather an intimation, that the notices in school district No. 94 were not properly signed or posted. A preponderance of the evidence is that said notices were properly given and the trial court so found.

The special election was held on the day set and called for in the notices, to wit, November 2, 1931.

█ The result of the balloting at said election showed that a majority of all the votes cast on the high school subject was in favor of consolidation, a majority of the votes in a majority of the districts affected, and a majority of the votes in a majority of the districts, other than district No. 4 (Amity, the district maintaining a standard high school) and a majority of the votes in district No. 4 was in favor of consolidation. The ballots were properly forwarded to the clerk of the district boundary board for canvassing. The procedure followed was a compliance with every requirement of the law. Before the board canvassed the votes, this suit was brought and a temporary injunction issued. The long delay between the action of the district boundary board in calling the election and the date it set for the election may be subject to criticism, but that is a matter for the legislature rather than the court.

On January 7, 1931, school districts Nos. 18, 20, 23, 27, 44, 94, of Yamhill county, presented to the district boundary board of said county due and legal petitions signed by the required number of legal voters. The

board thereupon gave the required notice and thereafter proceeded as if no other petition affecting any of the same districts was before it. These petitions will hereafter be referred to as the Dayton group. It will be observed that both the Dayton group and the Amity group included districts Nos. 20 and 94, overlapping to that extent.

District No. 94 is on an island. There is a slough between it and district No. 20. The real estate in each district, situate on either side of the slough, abuts the property of the opposite side. It is such a slough, that if it were designated as the boundary between two pieces of realty, in the absence of a more definite description, the boundary line would be the middle or thread of the stream; thus the two districts are contiguous.

The principal contention made by plaintiffs is that the district boundary board did not obtain jurisdiction of the Amity group of petitions because there was no election held in district No. 4 (Amity) prior to the circulation and filing of petitions asking for consolidation, showing that said district was in favor of the proposition. The statute does not so require.

We are of the opinion that a fair interpretation of the statute is that the fact that the district maintaining a standard high school is in favor of consolidation should be established by a vote of the legal voters of that district before the district boundary board orders an election in all of the districts on the subject. This construction seems to us to be in harmony with the general purpose and intent of the statute. It is quite probable that the districts, other than the one maintaining a standard high school, would not vote to consolidate if the voters knew in advance that such dis-

trict was opposed to consolidation. It is quite probable that they would not wish to be consolidated if the district maintaining the high school were excluded from the group. The district boundary board obtained jurisdiction of the subject matter upon the filing of the proper petitions. It exercised its jurisdiction when it caused due notice to be given fixing the date for hearing remonstrances. It would appear that while the district boundary board retains jurisdiction, and it has been informed of the fact that the district maintaining the standard high school had voted in favor of the consolidation called for in the petitions, it could legally call an election in the proposed consolidated district.

■■ The board did not lose jurisdiction by adjourning its specially called meeting to a time certain for further consideration of the matter. It could transact any business at the adjourned meeting that it could have considered and acted upon at its specially called meeting: 2 McQuillan on Municipal Corporations (2d Ed.), § 633, p. 455.

■ Appellant contends that because the district boundary board first acted upon the Dayton group of petitions it had exhausted its authority as to any conflicting petitions in the Amity group. They rely strongly on *School District No. 79 v. District No. 2,* 121 Ark. 584 (182 S. W. 268), and *Rural School District v. Tatum,* 139 Ark. 3 (211 S. W. 923). These cases are not in point. The law of Arkansas fixes the time when the county judge (whose functions regarding the creation of special school districts correspond with the duties of the district boundary board regarding the organization of union high schools in Oregon) loses jurisdiction of conflicting petitions.

"When an election has been called under the provisions of the act no election can be ordered on any

other petition embracing the same territory or any part thereof until an adverse vote has been had on the first petition, or the time for holding the election first called shall have passed without said election being held." Digest of the Statutes of Arkansas, Crawford and Moses, 1921, Sec. 8835.

There is no such provision in the law of Oregon. Until such time as the legislature sees fit to fix the procedure in that respect, it would appear that the safe rule to adopt in proceedings of this kind is to follow the sound and well established maxim, "First in time, superior in right." When a petition or petitions complying with the requirements of the statutes are filed with the district boundary board, the board should not entertain any conflicting petitions until the first filed is finally disposed of either by being dismissed by the board for a legal reason or by an adverse vote at an election called and held according to law.

The decree of the circuit court will be affirmed. Neither party to recover costs. It is so ordered.

BEAN, C. J., BROWN and BELT, JJ., concur.