Argued November 8; affirmed November 20, 1934

# SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY *v.* SCHOOL DISTRICT NO. 45, MULTNOMAH COUNTY, ET AL.

(37 P. (2d) 873)

*Homer Angell,* of Portland (Angell & Fisher, of Portland, on the brief), for appellant.

*L. V. Lundburg,* of Portland (B. A. Green, of Portland, on the brief), for respondent DeWitt Henley.

*Ralph H. King,* of Portland, for respondent School District No. 1.

KELLY, J.  Defendant DeWitt Henley filed a general demurrer to the further and separate answer of defendant School District No. 45, which demurrer was sustained; and, by stipulation, the facts, as distinguished from legal conclusions, alleged in the complaint and in the further and separate answer are admitted. They constitute all of the facts appearing in the record.

The complaint alleges that plaintiff was and now is a school district of the first class, and that defendant School District No. 45 was a school district of the second class in Multnomah county, Oregon; that defendants Rude, Dana and Mann, were the directors of School District No. 45; that the defendant Henley was a resident, property owner and taxpayer in said district No. 45, and that the defendants Phegley, Shull, Bigelow and

Cannon comprised the District Boundary Board of Multnomah county.

The remaining allegations of said complaint are as follows:

"That said School District No. 1 and said School District No. 45 are contiguous school districts in Multnomah County, Oregon. That within the ten days immediately prior to May 22, 1933, a petition from said School District No. 1 was presented to said District Boundary Board of Multnomah County. That said petition contained the signatures of 100 legal school voters of said School District No. 1, and set forth specifically therein that said district proposed to consolidate with said School District No. 45. That within the ten days immediately prior to May 22, 1933, a petition from said School District No. 45 was presented to said District Boundary Board of Multnomah County. That said petition contained the signatures of 50 legal school voters of said School District No. 45, and set forth specifically therein that said district proposed to consolidate with said School District No. 1. That each of said petitions requested said District Boundary Board to submit, at the next annual or special meeting, to the legal voters of the said districts the question of the consolidation of said districts.

"That the District Boundary Board met in regular session on May 22, 1933, at which time the said District Boundary Board considered the aforesaid petitions, and thereupon gave notice thereof to the School Board of said School District No. 1 and the School Board of said School District No. 45.

"That thereafter and on June 6, 1933, an election was held in said School District No. 1 at which a vote was taken upon said consolidation. That thereafter and on June 17, 1933, an election was held in said School District No. 45 at which a vote was taken upon said consolidation.

"That thereafter and on June 23, 1933, a meeting of said District Boundary Board was held and at

said meeting said District Boundary Board canvassed the vote at said elections and as a result of said canvass declared the vote on said consolidation at said election held in said School District No. 1 to be

For Consolidation . . . Yes 8,861
For Consolidation . . . No 4,427

and declared the vote on said consolidation at said election held in said School District No. 45 to be

For Consolidation . . . Yes 67
For Consolidation . . . No 96

"That said District Boundary Board thereupon declared that the vote for the consolidation of School District No. 1 and School District No. 45 had failed to carry in School District No. 45.

"That within the ten days immediately prior to April 7, 1934, a petition from said School District No. 1 was presented to said District Boundary Board of Multnomah County, Oregon. That said petition contained the signatures of 100 legal school voters of said School District No. 1, and set forth specifically therein that said district proposed to consolidate with said School District No. 45. That within the ten days immediately prior to April 7, 1934, a petition from said School District No. 45 was presented to said District Boundary Board of Multnomah County. That said petition contained the signatures of 50 legal school voters of said School District No. 45, and set forth specifically therein that said district proposed to consolidate with said School District No. 1. That each of said petitions requested said District Boundary Board to submit, at the next annual or special meeting, to the legal voters of the said districts the question of the consolidation of said districts.

"That the District Boundary Board met in regular session on April 7, 1934, at which time the said District Boundary Board considered the aforesaid petitions and thereupon gave notice thereof to the School Board of said School District No. 1 and the School Board of said School District No. 45.

"That thereafter and on April 28, 1934, an election was held in said School District No. 45, at which a vote was taken upon said consolidation.

"That thereafter and on May 7, 1934, a meeting of said District Boundary Board was held and at said meeting said District Boundary Board canvassed the vote at said election and as a result of said canvass declared the vote on said consolidation at said election held in said School District No. 45 to be

> For Consolidation . . . Yes  118
> For Consolidation . . . No   102

Thereupon said District Boundary Board at said meeting made the following declaration:

" 'In canvassing the vote it was found that the consolidation carried in District 45 with 118 votes for consolidation and 102 against. The District Attorney ruled that the vote taken in School District No. 1 a year ago for consolidation of Districts 45 and 1, showing 8,861 votes for consolidation and 4,427 votes against (see minutes June 23, 1933) would hold and no election in School District No. 1 would be necessary at this time.

" 'Therefore, the District Boundary Board declared School Districts 45 and 1 consolidated for all school purposes. The secretary was ordered to so advise the clerk of the respective districts, the county treasurer and the assessor of Multnomah County.'

"That thereupon the District Boundary Board, as set forth in the above proceedings, declared School District No. 1 and School District No. 45 consolidated; and thereupon said District Boundary Board notified the County Treasurer of Multnomah County, the County Assessor of Multnomah County, the Clerk of School District No. 1 and the Clerk of School District No. 45 of said consolidation.

"That no election has been held in School District No. 1 upon said consolidation since the election of June 6, 1933, and up to the time of the filing of this complaint.

"That by reason of the aforesaid action of the District Boundary Board the defendant School District No. 45 asserts that it is a part and parcel of School District No. 1 and that it has been duly and regularly consolidated with said School District No. 1. That defendant School District No. 45 demands that the plaintiff supply and furnish said defendant with teachers and all facilities necessary for the instruction of school children residing in the territory embraced within School District No. 45 before the aforesaid order of consolidation made by the District Boundary Board as hereinbefore alleged.

"That plaintiff is advised and therefore alleges that no valid consolidation of defendant School District No. 45 with plaintiff could be had without a further election to be held within School District No. 1, and that by reason of the fact that no such election was held after the filing of the petitions considered by the District Boundary Board on April 7, 1934, as hereinbefore alleged, the order of consolidation made by the District Boundary Board on May 7, 1934, was illegal and void.

"That the defendant DeWitt Henley has announced and declared that the territory embraced within School District No. 45 prior to the purported order of consolidation has not validly been included and consolidated with School District No. 1, and that School District No. 1 can not receive from the County Treasurer any funds belonging to School District No. 45, nor levy any tax for school purposes upon his lands situate within the former boundaries of School District No. 45. That plaintiff believes and therefore alleges that there are more than 25 taxpayers and property owners owning lands within the former boundaries of School District No. 45 who resist the levy of taxes for school purposes upon their lands.

"That plaintiff cannot prepare a budget of its revenues, nor proceed to pay teachers for the instruction of school children residing within the former boundaries of School District No. 45 without a determination

by this court of the validity of the order of the District Boundary Board of May 7, 1934, declaring School District No. 45 consolidated with School District No. 1. That unless plaintiff can levy taxes upon the lands and property within the former boundaries of School District No. 45 for the support of the public schools of School District No. 1, plaintiff has no funds and cannot rightfully supply instruction to school children residing within the former boundaries of School District No. 45.''

The further and separate answer reiterates the allegations of said complaint and presents copies of the petitions for consolidation filed with said District Boundary Board.

The pertinent language of the first of said petitions to said board is as follows:

''We the undersigned legal voters and petitioners of School District No. — (here the number inserted is No. 1 in one of the petitions and No. 45 in the other) of Multnomah County, Oregon, believing it to be for the best interests of the people of said school district, do most respectfully ask that the boundaries of said school district be changed to read as follows, to wit:

"Boundary of School District No. 1.''

(Here follows a description of metes and bounds of the boundary of School District No. 1 as it would be when changed so as to include School District No. 45 as proposed) ''and your petitioners will ever pray''.

The latter of these petitions are addressed to said board, one of which employs the following language:

''We, the undersigned petitioners duly qualified electors of School District No. 1 request that you take steps to submit to the voters of said district the question of consolidation with School District No. 45.''

The other requests the board to "put before the voters of said district" the question of said consolidation.

Subjoined to each of these later petitions is a description by metes and bounds of the boundary of School District No. 1 as it would be when changed so as to include School District No. 45.

Each of these descriptions is entitled: "Proposed Change of Boundary of School District No. 1 to include School District No. 45."

Paragraph XIII of said further and separate answer is as follows:

"That George W. Spring, Clerk of said School District No. 45, at the time of said consolidation, was notified by Roy E. Cannon, Superintendent of Multnomah County schools and Clerk of said District Boundary Board, to surrender his books for audit and that after the same were audited they would become the property of School District No. 1 and be placed in the custody of E. T. Stretcher, Clerk of said District, and that all funds in the hands of John M. Lewis, County Treasurer, belonging to School District No. 45 at the time of said consolidation should be surrendered and delivered to E. T. Stretcher, Clerk of School District No. 1, to be and become the property of said District, and that no further funds belonging to said School District No. 45 would thereafter be delivered to said George W. Spring, Clerk of said District. That pursuant thereto said George W. Spring, Clerk of said School District No. 45, and said School District No. 45 surrendered and delivered its books and records, and all funds on hand belonging to it, to wit, $4,988.62, together with the buildings, ground, equipment and all other property owned by it, to said School District No. 1, to be and become its property, and thereafter all funds collected by taxation for and on behalf of said School District No. 45 were paid over and delivered to said School District

No. 1, which funds aggregated up to and including July 5, 1934, the sum of $1,508.92. That subsequent thereto said School District No. 45 has ceased to operate or function as a school district and all of its activities, including the instruction of school children residing in the territory formerly embraced in School District No. 45, have been carried on by said School District No. 1. That thereupon said School District No. 1, took over the active management and control of all of said property and of the schools formerly being conducted by said School District No. 45 and continued to operate them as a part of said School District No. 1. That said School District No. 1 continued to carry out the contract theretofore entered into by the said School District No. 45 with its employees and paid them their salaries pursuant thereto, and entered and enrolled said teachers on the pension rolls of said School District No. 1 and declared the teachers of said School District No. 45 eligible to participate in the provisions of the Portland Teachers Credit Union for said School District No. 1 and forty-five memberships therein were taken by a number of said teachers and the loan provisions of said Credit Union were made available to them. That when the said order was entered said School District No. 45 was represented on the Multnomah County Non-High School Board by William Monohan, a school voter in said School District No. 45 who was duly elected thereto for a term of four years, three of which had not expired. That upon the entering of said order said William Monohan was declared ineligible thereto by reason of the fact that said School District No. 45 had ceased to exist and had become annexed to School District No. 1 which was not a non-high school district.''

It is also alleged in said further and separate answer that neither the plaintiff, nor any party hereto, nor any other person or corporation had taken any appeal, or given any notice of appeal from the decision of said District Boundary Board to the Superintendent

of Public Instruction and that said District Boundary Board in good faith made and entered the said order changing the boundary of School District No. 1 so as to include by annexation School District No. 45; that said school district in good faith acted upon said order and complied therewith; that all of the parties hereto had full and complete knowledge of all of the said acts and proceedings and all of the parties hereto are estopped from claiming that the said order was or is void and of no effect.

It is also alleged in said further and separate answer,

"That by reason of the question raised as to the validity of the annexation of School District No. 45 to School District No. 1, a determination by this court of the validity thereof is desirable."

In the complaint, plaintiff prays for an order declaring that said order of consolidation is illegal and void; that School District No. 45 has not been validly consolidated with School District No. 1, and that plaintiff is not obligated to furnish instruction to school children residing within the boundaries of School District No. 45 of Multnomah county.

In their said answer, answering defendants pray for a declaration that said order of consolidation is legal and in full force and effect, and that said School District No. 45 has been validly and legally annexed to School District No. 1 and that plaintiff is obligated to furnish instruction to school children residing within the boundaries of School District No. 1 as now changed by said order, so as to include territory formerly included in School District No. 45.

■ At the outset, we are confronted with the contention that the right of appeal given by statute from the order of the District Boundary Board to the Superintendent of Public Instruction must first be exhausted before this proceeding may be maintained.

Appealing defendant's authorities differ from the instant case.

*United States v. Uhl,* 262 Fed. 532, is an application by an alien seaman arrested and held for deportation for a writ of habeas corpus. The application was denied. We quote from this opinion,

"Briefly stated, what this petition comes down to is that a board of special inquiry has found, as a fact, that relator is liable to become a public charge. This conclusion relator is entitled to attack. But the procedure preliminary to such attack is clear."

Attention is there called to section 17 of the Act of Congress of February 5, 1917 (Comp. St. 1918 section 4289¼ ii), the concluding sentence of which is,—

"In every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of a board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor."

Then, the holding of the court is,

"Where,  *  *  *  a question of fact is involved, the statutory remedies and appeals must first be exhausted before this court will entertain an application for a writ of habeas corpus."

If the relator were liable to become a public charge, the board of special inquiry did not exceed its authority. Clearly, habeas corpus is not available where

the controlling question of fact, though disputed, has been decided adversely to the relator's contention by a tribunal having jurisdiction to decide it.

*State v. Clary,* 25 Neb. 403 (41 N. W. 256), is an application for mandamus to compel a county superintendent to divide a school district. The court held that the statute conferred judicial discretion upon the superintendent and that an appeal from his order was the remedy to be invoked.

*Lair v. Grant,* 244 N. Y. Supp. 427 (137 Misc. Rep. 470), is a suit in equity to test the constitutionality of the statute of New York, Education Law (Article 6-B added by Laws of 1914 c. 55). The court invokes the rule that,—

"It is only when some person attempts to resist the operation of the act, 'and calls in the aid of the judicial power to pronounce it void as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained'. People v. Brooklyn, F. & C. l. R. Co., 89 N. Y. 75, 93."

As to the allegations of irregularity or omissions, in the proceedings whereby the consolidation of school districts was effected, the court holds that an appeal to the commissioner of education is the exclusive remedy.

*Davis v. Whitehead,* 86 Okla. 273 (208 P. 216), was an action originally instituted to restrain and enjoin the county superintendent of public instruction from holding an election which had been called by him for the purpose of voting upon the consolidation of certain school districts. After the election was held, the validity thereof was assailed. We quote from the opinion:

"Upon an investigation of the authorities we find the better rule is that an injunction will not issue restraining the holding of an election. It is beyond the

power and authority of the courts to dictate to the officers of the people that they should not hold an election; and this rule is almost uniformly adhered to where the complaining party has an adequate remedy at law. If the courts would assume jurisdiction to restrain the officers of the people from calling and holding elections through fear that some imaginary wrong may be done to the complainant objecting to the holding of the election, then the people and their officers would be entirely subservient to the courts and the rights of the people to express their sentiments upon matters of governmental policy, and the administration of their public affairs through assembly and elections would be at the mercy of the courts. The law does not favor such a course of procedure."

Attention is also called to the right of appeal to the board of county commisioners from the action of the county superintendent in issuing the call for election, and, in case of successive adverse orders, the right of successive appeals therefrom first to the district court and then to the supreme court. It is also held that in passing upon the sufficiency of petitions for and in calling, elections, county superintendents of education, exercise a discretionary power, and that the right to appeal from such officer's action in that regard is a plain and statutory remedy to correct any errors therein. A plain, complete or adequate remedy at law prevents equitable jurisdiction.

*Lacock v. Miller,* 178 Iowa 920 (160 N. W. 291), is a case wherein two appeals are consolidated. Originally, each of the two cases sought an injunction against the officers of a consolidated school district. The court disposes of the case upon the merits upholding the consolidation. It is also stated in the opinion that the remedy in such cases is by appeal to the state superintendent of public instruction.

*State v. Rowe,* 187 Iowa 1116 (175 N. W. 32), is a proceeding in the nature of quo warranto to test the right of defendants to hold the office of school director of a consolidated school district. The court holds that jurisdiction attaches for the purposes of an election when the petition approved by the county superintendent and purporting to be signed by a sufficient number of electors is presented; and also where jurisdiction has been once acquired, irregularities in subsequent proceedings, if of material character, are errors which may be corrected on appeal, but they are not defects which justify the courts in interposing by certiorari injunction or quo warranto to declare the incorporation void and of no effect, or until the remedies provided by appeal have been exhausted.

*State v. Strauss,* 48 N. D. 927 (187 N. W. 964), is an appeal from an order of the district court denying a petition for a writ of certiorari. It was there held that the board of county commissioners had full and complete jurisdiction by virtue of the petition containing more than two-thirds of the names of the school voters residing within the territory of the proposed new district and therefore the order dismissing the petition for the writ of certiorari was affirmed.

*State v. Lester,* 50 S. W. (2d) 386, is a quo warranto proceeding wherein it was contended that in fact the requisite number of qualified voters had not signed the petition for an election. It was there held that the finding of the county judge was conclusive to the effect that the petition was so signed.

*Smith v. State,* 84 Okla. 283 (203 P. 1046), is an action in the nature of quo warranto, and it was there held that when a special election is assailed on the

ground of lack of compliance with all the statutory requirements in reference to notice, but there is no averment or showing that the electors did not have actual notice or knowledge of the election and failed to participate therein by reason thereof, the same will not be held void on this account.

It is also there held that after the sufficiency of the petition has been determined by the county superintendent and the call issued for such meeting, and a majority of those present vote in favor of consolidation and the consolidated district is organized, in all other respects according to law, in the absence of frauds, the question of whether the petitions were signed by the proper number of qualified persons cannot be inquired into in a quo warranto proceeding.

*State v. Peterson*, 55 Mont. 355 (177 P. 245), is an appeal from a judgment denying a writ of certiorari. It was there held that the board of trustees, the county superintendent, and the board of county commissioners, having had jurisdiction of the petition for the creation of the proposed new school district, and not having exceeded *such jurisdiction*, the court below did not err in dismissing the proceeding.

The distinction between the foregoing cases and the instant case is that in each of those cited the court recognizes that the board, whose action is attacked, had jurisdiction and did not exceed its authority, while in the case at bar we think the defendant, the Boundary Board of Multnomah county, exceeded its authority in making its order of May 7, 1934, declaring School Districts Nos. 45 and 1 consolidated for all school purposes. Where the board under investigation has acted without jurisdiction or in excess of its powers, the party aggrieved, without appealing to the school offi-

cials, may apply in an appropriate proceeding to the courts: *City of Dallas v. Mosely,* (Tex. Civ. App.) 286 S. W. 497; *Henderson v. Miller,* (Tex. Civ. App.) 286 S. W. 501; *Hale v. McMurrey,* (Tex. Civ. App.) 22 S. W. (2d) 499; *County Board of School Trustees v. Wilson,* (Tex. Civ. App.) 15 S. W. (2d) 144; *Valentine v. Ind. School Dist.,* 187 Iowa 555 (174 N. W. 334, 6 A. L. R. 1525); *Miller v. Dailey,* 136 Cal. 212 (68 P. 1029); *Knowlton v. Baumhover,* 182 Iowa 691 (166 N. W. 202, 5 A. L. R. 841); *Kinzer v. Directors of School Dist.* (Kinzer v. Toms), 129 Iowa 441 (105 N. W. 686, 3 L. R. A. (N. S.) 496, 6 Ann. Cas. 996).

■ It is also urged that only the state in a direct proceeding can attack the validity of the formation of a school district, changing the boundary lines consolidating it or annexing it to another. With one exception the authorities cited by appealing defendant in support of this point are not cases invoking relief under the declaratory judgment law. That one exception is the case of *Gwynne v. Board of Education,* 259 N. Y. 191 (181 N. E. 353). In that case, it was held that the corporate entities the school districts were bound by the decision of the state commissioner of education to whom an appeal was taken from the order of the district superintendent, and as to them the order of consolidation was lawful and effective. The plaintiff, however, besides asking for a declaratory judgment, sued as a landowner to remove as a cloud on title the lien of a tax levied by the school district; therefore, inasmuch as plaintiff had not delayed too long her action to vacate the assessment on her property as a cloud on title, but her attitude was consistently one of protest and as the consolidation was a nullity and the tax imposed was without authority, the judgment in favor of plaintiff was affirmed.

We think that this remedy by proceeding under the declaratory judgment law should not be denied to the parties hereto merely because a proceeding in the nature of quo warranto might also be invoked.

■ It is also urged that defendant Henley participated in the proceedings, had full knowledge of the action of the boundary board and has stood by without taking an appeal; hence, he is guilty of laches and is estopped from denying the validity of the proceedings.

To this point, appealing defendants cite *State v. Consolidated Independent School District,* 193 Iowa 856 (186 N. W. 426). There, an election was held at which there were 245 votes in favor of and 42 votes against the proposed consolidation. Two months thereafter, the regular annual election in said district was held. The following month a proposition to vote bonds in the sum of $185,000 was submitted to the voters of said consolidated district for the purchase of a school site and for the construction and equipment of a new schoolhouse. This proposition was carried by a large majority. Quo warranto proceedings were then instituted. It was contended that the polls remained open a few minutes after the closing hour during which the votes were cast and that fraudulent statements and promises were made to the voters. The court held that the first ground did not invalidate the election and that the second ground had not been proven. The court also held that,—

"With full knowledge relators remained silent and permitted the organization of the district; witnessed the annual election in the following March; allowed the inauguration of a central school system; knew that the board of directors was entering into contracts with teachers and that taxes were being levied upon the

property of the entire district, and finally upon the day a bond issue was voted asked leave of court to commence this cause of action. A recognition of such a right under the circumstances would cause irreparable injury to the district.''

Appealing defendants also cite the case of *Board of Supervisors v. Brown,* 146 Miss. 56 (111 So. 831). There it was held that the failure of the board of supervisors to designate the location of the schoolhouse was a jurisdictional defect that was fatal to the validity of the establishment of the district. The question was presented by objection against the issuance of bonds, after the election returns authorizing such issuance were filed. These objections were overruled by the board of supervisors. An appeal was prosecuted to the circuit court when upon hearing said court held the establishment of said district was void. Upon appeal to the supreme court, the judgment of the circuit court was affirmed.

In the case of *Henderson v. School District No. 44,* 75 Mont. 154 (242 P. 979), there was an attempt apparently in good faith to organize under an existing law resulting in an order of annexation to defendant of District No. 42, and followed for more than five years by user, acquiesced in by the public officials, district No. 42 and all of the resident freeholders thereof including plaintiffs. The court held that plaintiffs were in no position to question the enlarged district.

*Moore v. County Board of Education,* 186 Ark. 1197 (55 S. W. (2d) 922), is a case where an application for a writ of certiorari was denied because more than 11 months intervened between the making of the order of consolidation and the institution of the proceedings to quash it.

The complaint in the case at bar was filed only two months and six days after the purported order of consolidation was made. We think that the institution of the proceeding two months and six days after the order of the boundary board was made negates and refutes the claim that any of the parties have been guilty of laches.

■ It is also argued that the school district itself as such cannot attack the regularity or validity of a change made in its boundaries by boards upon whom power to make such changes has been conferred.

To this point appealing defendants cite *Sherman County School District No. 67 v. Sherman County School District No. 24,* 55 Neb. 716 (76 N. W. 420); *School District No. 1 v. Wheeler,* 25 Neb. 199 (41 N. W. 143) and *Cowlez v. School Dist. No. 6,* 23 Neb. 655 (37 N. W. 493).

None of these cases is based upon the declaratory judgment statute. The one last cited, upon which the other two are based, involved the exercise of discretion on the part of the county superintendent in a matter over which he had jurisdiction and did not involve any property or contract right or interest of the corporation. Moreover, the rights of defendant Henley, who is actively challenging the validity of the action of the boundary board, require a determination thereof.

It will be noted that the only case cited above wherein a consolidation was upheld, which was effected without submitting the question to the qualified voters of the districts affected, was one in which more than five years had elapsed before any steps were taken to question its validity: *Henderson v. School Dist. No. 44,* supra.

It will be noted also that in one of said cases it was held that a jurisdictional defect may be the basis of questioning the validity of the issuance of bonds by the consolidated district even after the time has expired within which such defect may be urged against the validity of such consolidation: *Board of Supervisors v. Brown*, supra.

We think that the failure to submit the question of the proposed consolidation of the two districts affected in the case at bar to the voters of one of said districts was a jurisdictional defect, or, to state it differently, that the attempted consolidation was unauthorized without such submission to the voters of District No. 1.

The procedure for the consolidation of districts is set forth in section 35-903, Oregon Code 1930, as amended by Chapter 188, Laws of 1931, pp. 302, 303, sections 35-909, 35-910, 35-911 and 35-912, Oregon Code 1930. These sections provide in effect that when a petition therefor from a district of the first class signed by at least 100 legal voters and from a district of the second class signed by at least 50 legal voters shall be presented to the District Boundary Board, said District Boundary Board shall so notify the district school board of each of the districts designated by the petition. Each district school board receiving such notice shall cause its district clerk to publish, as a part of the notice for the succeeding annual or special meeting, that a vote will be taken at such meeting upon the question of the consolidation of the districts designated. The vote shall be by ballot. The returns thereof shall be made to the District Boundary Board directed to the county school superintendent as a member thereof. If the board shall determine from the returns that a majority of the votes cast in each of said districts is in favor of consolidation, it shall immediately notify the district school

board of each district concerned of the result of such election and within 10 days thereafter shall consolidate said districts into one district. If the District Boundary Board shall determine that less than a majority of all the votes cast in any one of said districts is in favor of consolidation, then said board shall notify each of the district school boards concerned that the proposition to consolidate is defeated.

The election held in School District No. 1 on the 6th day of June, 1933, and in School District No. 45, on June 17, 1933, resulted in the proposition for consolidation being defeated. That election could not in any way affect a subsequent election.

It is only when the District Boundary Board may determine from the returns of election that a majority of the voters in each district is in favor of such consolidation that such board is authorized to consolidate two or more districts. No discretion is vested in the said board in that respect. To consolidate districts when no such returns of election have been made is illegal. It would be equally illegal to refuse to consolidate if returns were made showing a majority in each district in favor of such consolidation; or to refuse to declare the consolidation defeated if one of the districts be shown to have registered less than a majority in favor thereof.

In *Evans v. Hurlburt,* 117 Or. 274 (243 P. 553), this court held that there were two methods prescribed by statute whereby a district or districts might be annexed, united or joined to another district. That case was decided February 23, 1926. The statute there construed (section 35-903, Oregon Code 1930) was amended by chapter 188, Oregon Laws, 1931, by adding the following clause thereto,—

"* * * provided, however, that the district boundary board shall have no power to annex a school district

having ten or more children of school age to one or more adjoining districts without submitting the question to the voters of such districts in the manner providing for consolidating school districts as described by section 35-909, Oregon Code 1930.''

It being admitted that District No. 1 is a district of the first class, that is one having 1,000 or more children of school age; and that District No. 45 is a district of the second class, that is one having more than 200 and less than a thousand children of school age, it is obvious that the District Boundary Board has no power to consolidate them without submitting the question of the propriety of such consolidation to the voters of each of such districts.

As stated, there were two sets of petitions presented to the District Boundary Board. One was presented in May, 1933. This set of petitions employed language conformable to section 35-903, Oregon Code, as amended by chapter 188, Laws of 1931, for in each of these petitions the petitioners ''do most respectfully ask that the boundaries of said school district be changed to read as follows:'' The language of the statute is: ''The district boundary board may, when petitioned to do so,'' etc.

The second set of petitions, dated March 19, 1934, conforms more nearly to the language of section 35-909, Oregon Code 1930. That section provides that such petitions ''shall request the district boundary board to submit, at the next annual or special meeting to the legal voters of the several districts, the question of the consolidation of such districts''.

We cannot concur with appealing defendants' view that the District Boundary Board retained jurisdiction of the matter from the filing of the first set of petitions in May, 1933, until the purported final order upon the second set of petitions was entered on May 7, 1934.

We give no consideration to the statement in brief of defendant Henley, that,—

"The facts, in addition to the allegations of the complaint considered by the lower court, were, to-wit:

"The minutes of Boundary Board of the meeting of May 22, 1933, referred to in paragraph VII of the complaint (abstract of record, p. 5) contain this:

" 'The secretary was ordered to advise the School Board of each district, in accordance with Section 35-909, and section 35-1007 of the 1931 School Laws.'

"The minutes of the same board, dated June 6, 1933, after a canvass of the vote, set forth in paragraph IX of the complaint (abstract of record, p. 6) contain this on consolidation.

" 'Failed to carry, so declared.' "

We cannot consider this record because it is not within the terms of the stipulation as to the facts of this case; but, in the absence of other evidence, we are warranted in presuming "that official duty has been regularly performed": Sub-div. 15, section 9-807, Oregon Code 1930. By applying this presumption, we arrive at the conclusion that the District Boundary Board notified each of the school boards concerned that the propostion to consolidate was defeated. There is no provision of the statute giving discretion to the District Boundary Board to treat the favorable vote of a school district at one election upon the question of consolidation with some other district voting favorably thereupon as a continuing offer to become effective at some future election when such other district alone may change its position and also vote favorably.

To support the consolidation attempted herein, we must treat procedural rules as paramount to the principle that at all times the people should be protected and encouraged in the exercise of their right to express

themselves by means of the ballot upon questions of public policy.

The case of *Will v. District Boundary Board,* 141 Or. 54 (16 P. (2d) 24), is cited by appealing defendants. That is a case involving the organization of a union high school. It is there recognized that an adverse vote at an election called and held according to law finally disposes of a petition for a consolidation of a school district.

Speaking through Mr. Justice CAMPBELL, this court said:

"When a petition or petitions complying with the requirements of the statutes are filed with the district boundary board, the board should not entertain any conflicting petitions until the first filed is *finally disposed of* either by being dismissed by the board for a legal reason or *by an adverse vote to an election called and held according to law.*"

*Milsap et al. v. Holland,* 184 Ark. 996 (44 S. W. (2d) 662), holds that after a petition for the formation of a new school district has been filed with the county board of education, a petitioner may not have his name taken therefrom unless his signature has been procured by some improper method.

We have referred to *State v. Rowe,* supra. We need only to add that it is not a case where final disposition of the petition had been accomplished by an adverse vote at an election called and held according to law.

*Heppe v. Mooberry,* 350 Ill. 641 (183 N. E. 636), cited by appealing defendants, holds that persons signing petitions for detachments of territory from one school district and attachment to another may withdraw their names at any time before final action of the trustees on petition; that concurrent action "required

in such case does not mean 'joint action' " but independent action by each board which must have jurisdiction; that by withdrawal of names of legal voters signing the petition, the school board was deprived of its jurisdiction and, therefore, the order for detachment and attachment of territory was void for want of jurisdiction.

*State ex inf. v. Lamar,* 316 Mo. 721 (291 S. W. 457), holds that the statute specifying the time for a public officer's performance of official act regarding rights and duties of others is directory merely, unless the nature of the act or phraseology of the statute is such that the designation must be considered a limitation of the officer's power. There the statute provided that the superintendent should call the election within 30 days after the filing of the petition. The superintendent made the call on the thirty-first day thereafter. It was held that this did not invalidate the election.

*State v. Consolidated Independent School District,* 195 Iowa 637 (192 N. W. 5), holds that omission to give notice to an objector of time for hearing appeal from the order of the superintendent in favor of petitioners and correction of such omission by appointing a time for a new hearing before the superintendent, although after the time prescribed by statute, did not deprive the superintendent of jurisdiction to hear and determine objections to said petition and submit the question to the voters of the proposed district. In that case there was but one election.

*Strickland v. Benton,* 166 Ga. 168 (142 S. E. 671), holds that an order of consolidation is not made final and unchangeable when, under the Georgia statute, because of objections by the requisite number of pa-

trons, an election is held resulting in favor of such consolidation. We quote from the opinion in that case,—

"While the consolidation of two or more school districts or parts of school districts by the county board of education cannot become effective when objection to such consolidation is made by the requisite number of patrons of the schools affected without the ratification of the consolidation by a majority of the qualified voters voting at an election held to determine whether or not such consolidation shall become effective, the county board of education can without the sanction of the voters divide the consolidated school district and restore the districts or parts of districts embraced in the consolidated school district as they existed prior to the consolidation."

It is apparent that in this case the authority of the county board of education to divide or separate any school district into two or more school districts is not subject to the plebiscite, while in order to effect a consolidation when objection is made thereto by the requisite number of patrons, the matter must be determined by an election. Nothing is said or intimated in this opinion to the effect that jurisdiction of the board by virtue of the petition for consolidation continues after determination thereupon by election.

In the case at bar, no suggestion is made that the first election actually held in both districts was not properly conducted nor that the second election in District No. 45 was attended by any improper conduct, yet, we are cited to the case of *State ex rel. Miller v. Consolidated School District No. 7*, 318 Mo. 865 (1 S. W. (2d) 94). There, the court construes a provision of the statute stating that,—

"* * * *each person desiring to vote shall advance to the front of the chairman and deposit his ballot in a box to be used for that purpose.*"

We quote:

"If it has been shown, as testified to by a number of witnesses, and as found by the trial court, that each voter had an opportunity to cast his ballot on the question of consolidation and that a majority of the votes cast were in favor of the same, we will hold that a failure to formally comply with the italicized portion of the section is directory."

In the case at bar, upon the second petition for consolidation, no opportunity whatever was afforded to any voter in District No. 1 to cast his ballot on the question of consolidation. There may be Republicans still voting for Abraham Lincoln and Democrats voting for Andrew Jackson, but this court being nonpartisan, cannot judicially note nor officially validate such voting. Once having favored consolidation, the voters of District No. 1 were not forever thereafter bound to maintain that attitude. They, their heirs and successors, were entitled to vote as early and as often thereupon as the voters of District No. 45.

*Molyneaux v. Molyneaux,* 130 Iowa, 100 (106 N. W. 370), holds that when the electors of a school district were all present and had an opportunity to and did vote upon the question of proposed consolidation, they are estopped from asserting invalidity of petition and notice because of failure to describe the territory affected. It is also held that the failure to hold the elections on the same day in each of the districts was not fatal to the proceedings.

To summarize, we hold that the petitions of May, 1933, were finally disposed of by the election in June, 1933; that the order consolidating the districts made on the 7th day of May, 1934, was void, because, in making it, the District Boundary Board exceeded its author-

ity; that neither of the school districts nor the personal defendants were bound by that order or under any obligation to appeal from it, and that the parties hereto have not been guilty of laches in prosecuting this proceeding to determine their rights herein.

The judgment of the circuit court is affirmed.

BAILEY, J., did not participate in this opinion.