Argued January 9; reversed February 4, 1947

# TOMPKINS *v.* DISTRICT BOUNDARY BOARD
## OF YAMHILL COUNTY ET AL.
### (177 P. (2d) 416)

*Paul A. Sayre* and *John H. Holloway,* both of Portland, for appellants.

*Irving D. Brown,* of Salem, for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY and HAY, Justices.

BAILEY, J.    This is a proceeding under the uniform declaratory judgments act (§ 6-601 to 6-616, inc., O. C. L. A.), to obtain an adjudication of the validity of § 111-3143, O. C. L. A., as amended by chapter 253, Oregon Laws 1945.  From a judgment on the pleadings, declaring the amendment unconstitutional, defendants, School District No. 94 of Yamhill County, the directors and clerk thereof, Dayton Union High School District No. 4 of Yamhill County, and the directors and clerk thereof, have appealed.

Jake Tompkins, Jr., owner of real property and a taxpayer in School District No. 94 is plaintiff, and

defendants are the appellants above named and the members of the District Boundary Board of Yamhill County, Amity Union High School District No. 5 of Yamhill County and the directors and clerk thereof. Those defendants who have not appealed were served with the amended complaint but made no appearance after such service.

Section 111-3143, as originally enacted, was § 3 of chapter 101, General Laws of Oregon, 1907. The title of that chapter reads as follows: "An act to provide for the establishment of union high school districts, and for the maintenance and government of the same, and to define the powers thereof." Section 3 of chapter 101 prescribed the procedure to be followed whenever "it is desired to unite two or more contiguous school districts in this state for high school purposes only". It had been amended seven times prior to the 1945 amendment, which added to subsection 8 of § 111-3143, *supra,* the following:

"If the board finds that in any district consisting of an island a majority of the vote was not in favor of forming a union high school district, and yet by the provisions of this act such district has been made a part of said union high school district, such district voting against the formation of a union high school district may, at any date after five years but not later than 15 years from the date of the formation of the union high school district, at a district election called as provided by law, vote upon the proposition of remaining as part of the union high school district. The district boundary board shall canvass the vote and determine the results thereof. If the boundary board determines that a majority of the vote is in favor of withdrawal, said withdrawal shall become effective at the end of the school year in which the election is held. This

provision shall not apply where withdrawal of the district will make any of the remainder of the union high school district noncontiguous and the withdrawal of a district from a union high school district under this provision shall not relieve the district so withdrawn from liability for indebtedness contracted while it was a part of a union high school district; provided, that a school district withdrawing from a union high school district under the provision of this act shall not be liable for indebtedness of the union high school district incurred subsequent to the date of calling an election at which such district votes to withdraw from such union high school district.''

An emergency was declared, and chapter 253, *supra,* became effective on March 17, 1945.

The facts are not in dispute. On or about the 12th day of November, 1930, a petition was filed with the District Boundary Board of Yamhill County, Oregon, seeking to organize a union high school district, including elementary school districts Nos. 4, 20, 25, 33, 49 and 94 in Yamhill county. Thereafter, and on November 2, 1931, at an election held in the proposed union high school district, 210 votes were cast in favor of the organization and 50 against it. School District No. 94 was the only one in which a majority of the votes cast was against the organization. After canvassing the votes the district boundary board declared that Amity Union High School District No. 5 was regularly organized.

It is alleged in the pleadings that School District No. 94 has been generally known as the Grand Island School District. The litigants assume, and the case has been presented on the assumption, that District No. 94 is a ''district consisting of an island'' within

the meaning of those words as used in the 1945 amendment above quoted.

At an election held on April 9, 1945, in School District No. 94, there were cast 32 votes in favor of and 9 against that district's withdrawal from the Amity Union High School District. On or about May 14, 1945, at another election held in School District No. 94, a majority vote was cast in favor of the annexation of that district to Dayton Union High School District No. 4, and on May 23 of that year the District Boundary Board of Yamhill County declared that School District No. 94 had been annexed to that union high school district.

The effect of the decision of the circuit court is to invalidate the attempted withdrawal of School District No. 94 from the Amity Union High School District, and its attempted consolidation with the Dayton Union High School District. On the oral argument in this court it was contended by the defendants for the first time that this action is in the nature of a quo warranto proceeding to test the validity of the organization of two union high school districts, and that such a proceeding can be maintained only by, or on the relation of, the attorney general or the proper district attorney, on the ground that such matters are primarily of public interest. In support of this contention defendants cite and rely upon the case of *State ex rel. v. School District No. 23,* 179 Or. 441, 172 P. (2d) 655. That was a quo warranto proceeding brought on the relation of a taxpayer to test the validity of the consolidation of school districts. It was there decided that a "de facto municipal corporation, however, is not exempt from attack in quo warranto proceedings brought directly against it by the state or upon the relation of a private person".

344

*School District No. 1 v. School District No. 45,* 148 Or. 554, 37 P. (2d) 873, was a proceeding brought by one school district against another for an adjudication as to the validity of the consolidation of the two districts. It was urged there also that only the state in a direct proceeding could attack the validity of the formation of a school district, and therefore the proceeding could not be maintained by the plaintiff in that case. This court, however, held to the contrary. See also in this connection *Chestnut v. Reynolds,* 291 Ky. 231, 163 S. W. (2d) 456.

Section 6-602, O. C. L. A., which is a part of the declaratory judgments act, provides that any person whose rights are affected by any statute may have its validity determined. It is alleged that plaintiff is a property owner in School District No. 94, and that he will "suffer irreparable injury and the taxes on plaintiff's property will be materially increased to plaintiff's detriment" unless the elections in School District No. 94 relating to its withdrawal from Amity Union High School District and its consolidation with Dayton Union High School District are declared illegal and void. Section 6-611, O. C. L. A., provides that if the validity of any statute is involved, the attorney general of the state shall "be served with a copy of the proceeding and be entitled to be heard." The attorney general was served with a copy of the amended complaint in this proceeding but has not appeared.

■ In our opinion the defendants' contention that this proceeding can not be maintained by the plaintiff is without merit.

The only question remaining for decision is whether the 1945 amendment of § 111-3143, O. C. L. A., is in

contravention of article IV, § 20, Oregon Constitution, which reads as follows:

> "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

■■ The title of an amendatory act is sufficient if it refers to a particular section of the code or other compilation of laws without in any way indicating the subject matter of the section, and under such a title any legislation which could have been included in the original act will not be objectionable to article IV, § 20, Oregon Constitution. *McLaughlin v. Helgerson*, 116 Or. 310, 241 P. 50; *State ex rel. v. Latourette*, 168 Or. 584, 125 P. (2d) 750; *First National Bank v. Benton County*, 175 Or. 485, 154 P. (2d) 841. No provision is permissible in an amendatory act which is beyond the scope of the subject expressed in the title of the act amended. *First National Bank v. Benton County*, supra, and cases cited.

■ We shall now consider whether the provisions of the 1945 amendatory act (Chap. 253, Oregon Laws 1945) are germane to and within the scope of the subject expressed in the title of the original act. (Chap. 101, General Laws of Oregon, 1907). In *Hargis v. Board of Commissioners*, 165 Ind. 194, 73 N. E. 915, the court stated the following well recognized rule:

> "* * * The title of an act is to receive a liberal construction, if necessary to sustain the legislative intent. If the words used in a title, taken in any sense or meaning they will bear, are sufficient to

cover the provisions of the act, the act will be sustained, even though such meaning may not be the most common meaning of such words. These rules, however, are to be used to effectuate, not to defeat, the legislative intent." Citing numerous authorities.

It is pointed out in *Lovejoy v. Portland,* 95 Or. 459, 188 P. 207, that one of the abuses which developed in legislative assemblies was the practice of concealing from the members thereof the true nature of proposed laws by giving them false and misleading titles, and that such and similar abuses inspired the adoption of article IV, § 20, *supra.* The court there said:

"* * * While Article IV, Section 20, is mandatory and failure to comply with it renders a statute void, yet this section of the Constitution should be reasonably and liberally construed to sustain legislation not within the mischief aimed against: State v. Shaw, 22 Or. 287, 288 (29 Pac. 1028); 25 R. C. L. 85. Every legislative act is presumed to be constitutional, and the conflict between a statute and the Constitution should be palpable before the legislative enactment is held to be void on the ground that it embraces more than one subject or because the subject is not sufficiently expressed in the title."

██ The rule to be followed in the construction of titles to legislative enactments is clearly stated in 50 Am. Jur., Statutes, § 168, p. 147, as follows:

"A constitutional provision requiring the subject or object of a statute to be stated in the title, should not be construed strictly, narrowly, hypercritically, or technically, but should be construed reasonably, fairly, justly, and even liberally construed, due regard being had, not only to its letter, but also to its spirit. The constitutional provision should not be so interpreted as to render it oppressive or impracticable, or to obstruct, hamper, or cripple legislation, or to promote controversy in

regard to the validity of legislative enactments. On the other hand, the construction should not be so liberal as to render the constitutional provision nugatory.''

Proceedings were instituted for the formation of the Amity Union High School District in November, 1930, and in November, 1931, the school district was declared organized by the District Boundary Board of Yamhill County. The law in effect at the time of those proceedings was chapter 178, General Laws of Oregon, 1929, (codified as § 35-3703, Oregon Code 1930) which was an amendment of § 3, chapter 101, General Laws of Oregon, 1907, as amended. That law provided that if ''the board shall determine that a majority of all votes cast on the high school subject is in favor of uniting such districts for high school purposes, providing, however, that the majority of all votes cast in a majority of districts shall be in favor of such proposition, * * * then said board shall declare such union school district regularly organized * * *.'' It has been hereinbefore pointed out that the only school district which voted against the establishment of the Amity Union High School District was School District No. 94, generally known as the Grand Island School District.

Section 111-3143, O. C. L. A., as amended by chapter 253, Oregon Laws 1945, specifies the procedure to be followed in the organization of union high school districts. Under the procedure there prescribed, the district boundary board is required to declare the proposed union high school district regularly organized if a majority of the votes cast in such district and a majority of the votes cast in a majority of the elementary school districts, included in such proposed district, are in favor of the organization. Districts

voting against the organization are included, with those casting a favorable vote, in the new district. Up to this point the present law does not differ materially from the law in existence at the time the Amity Union High School District was organized.

By the 1945 amendment "any district consisting of an island", in which "a majority of the vote was not in favor of forming a union high school district, and yet by the provisions of this act such district has been made a part of said union high school district", is given the right to terminate its connection with such union high school district, if its withdrawal will not "make any of the remainder of the union high school district noncontiguous". Before exercising the right thus granted, such district must have been a part of the union high school district for not less than five nor more than fifteen years. The withdrawal of any such district does not relieve it "from liability for indebtedness contracted while it was a part of a union high school district".

We again refer to the title of the 1907 enactment, which is as follows: "An act to provide for the establishment of union high school districts, * * *." It is the plaintiff's contention that the new matter added by the 1945 amendment is beyond the scope of the subject expressed in the foregoing title. The word "establishment" is defined by lexicographers as the act of establishing, or the state of being established. The word "establish" has many meanings, varying with the subject matter with which it is used. *Village of Villa Park v. Wanderer's Rest Cemetery Co.,* 316 Ill. 226, 147 N. E. 104; *Temple v. City of Petersburg,* 182 Va. 418, 29 S. E. (2d) 357. Webster's New International Dictionary gives this definition of the word "establish" when used with reference to a state, a

colony, or other institutions: "To originate and secure the permanent existence of; to found; to institute; to create and regulate". The words "establish", "create", "form", and "organize" are often used interchangeably and as practically synonymous. *State ex rel. v. School District No. 152,* 54 Minn. 213, 55 N. W. 1122.

In *State ex rel. v. Rogers,* 107 Ala. 444, 19 So. 909, 32 L. R. A. 520, the court had under consideration an enactment of the legislature of Alabama entitled: "An act to establish a board of revenue for Lowndes county, and to define the powers and duties of said board of revenue." The first section of the act declared that the existing board of revenue of Lowndes county "shall be so changed as to consist of five members," and prescribed the duties of such new board. It was there contended that the provisions of the body of the act were not expressed in the title of the act, and that the title of the act referred to a new board of revenue to be thereafter created and not to an existing board. In answering this contention, the court, after a most excellent discussion relative to the matters here under consideration, stated:

"* * * It is only when matter foreign to, or incongruous with the title has been introduced, that the title has been declared misleading and deceptive, and the enactment pronounced void. Nor is it necessary that the legislature adopt that which the courts may regard as the most appropriate or expressive title; the courts do not subject the titles to the rules of a nice verbal criticism, or often legislative action, as it has been properly said, would be frustrated, without fulfilling the intention of the framers of the constitution.

"It may be conceded the title of the present act would be appropriate as the title of an act originat-

ing and creating a board of revenue. It is the title of the act originating and creating the board of revenue for the county of Lowndes. (Pam. Acts, 1875-76, p. 383). But this does not involve the concession, that the title is so inappropriate as to offend the constitution, when it is employed as indicative of the subject of the reconstruction, reformation, or reconstitution of an existing board. The insistence hinges on the use of the word *establish,* which seems to be supposed incapable of proper use when employed in this connection, or of any other signification than to found and set up; yet, it is as often employed, to signify the putting or fixing on a firm basis, of putting in a settled or an efficient state or condition, an existing legal organization or institution, as it is to found or set up such organization or institution; the one meaning is as little recondite, abstruse, or obscure as the other.''

■■ The provisions of the 1945 amendment are germane and not foreign to or incongruous with the title of the 1907 act. They relate to the establishment of union high school districts and specify the conditions under which certain elementary school districts may be included. By providing for the withdrawal of a portion of a union high school district, that amendment in effect provides also for a step in the ''reconstruction'' or ''reformation''—in a broad sense for the establishment—of such district. Every legislative act is presumed to be constitutional and every intendment must be indulged by the court in favor of its validity. We are of the opinion that the 1945 amendment is not violative of article IV, § 20, Oregon Constitution.

The judgment appealed from is reversed and the cause remanded to the circuit court with instructions to enter judgment in accordance with this opinion. No costs will be allowed in this court.